United States Court of Appeals,

Eleventh Circuit.

No. 94-9369.

WILDERNESS SOCIETY, et al., Plaintiffs-Appellants,

v.

John E. ALCOCK, as Regional Forester of the Southern Region of the U.S. Forest Service, et al., Defendants-Appellees.

May 22, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-cv-1040-ODE), Orinda D. Evans, Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and FAY, Senior Circuit Judge.

TJOFLAT, Chief Judge:

On May 1, 1992, several environmental groups filed a complaint in the district court against the Secretary of Agriculture and officials of the United States Forest Service,[1] seeking review of the 1986 Final Land and Resource Management Plan (the "Plan") for the Cherokee National Forest. These groups alleged that the Plan violates the National Forest Management Act, 16 U.S.C. §§ 1600 *et seq.* (1994) ("NFMA"), and the regulations promulgated thereunder, *see* 36 C.F.R. part 219 (1995). On cross motions for summary judgment, the district court found that the environmental groups lacked standing to bring a challenge to the Plan, and, further, that they did not present a ripe controversy. The court therefore granted summary judgment in favor of appellees. We affirm.

---

[1]In September of 1992, a group of timber companies sought to intervene as defendants in this action. The district court granted them permissive intervention under Fed.R.Civ.P. 24(b) in October of 1992. Hereafter, "appellees" will refer to all defendants in the court below.

I.

Section 1604(a) of the NFMA directs the Secretary of Agriculture to "develop, maintain, and, as appropriate, revise land and resource management plans ["LRMPs"] for units of the National Forest System."  16 U.S.C. § 1604(a).[2]  Each LRMP is to "guide all natural resource management activities and establish management standards and guidelines for the National Forest System.  [LRMPs] determine resource management practices, levels of resource production and management, and the availability and suitability of lands for resource management."  36 C.F.R. § 219.1(b).  In developing a LRMP, the Secretary must consider:  compliance with the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4370d (1994) ("NEPA"),[3] see 16 U.S.C. § 1604(g)(1);  the diversity of the plant and animal species in the forest, see 16 U.S.C. § 1604(g)(3)(B);  the suitability of lands within the forest for resource management, see 16 U.S.C. § 1604(g)(2)(A);  the special circumstances of the forest (e.g., the soil quality or available water resources) that might affect the methods used to harvest renewable resources and the amount of renewable resources that can be harvested, see 16 U.S.C. § 1604(g)(3)(C)-(F);  and the "economic and environmental aspects of various systems of renewable resource

_____

[2]The Secretary does not personally develop LRMPs.  LRMPs are prepared by the Forest Service under the direction of the regional forester, the person responsible for the administration of the forests within a region.

[3]The NEPA requires that an environmental impact statement be prepared for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).

management, including the ... protection of forest resources, to provide for outdoor recreation (including wilderness), range, timber, watershed, wildlife, and fish," *see* 16 U.S.C. § 1604(g)(3)(A).

In January of 1986, after several years of preparation, a proposed LRMP for the Cherokee National Forest was circulated for public comment. The Forest Service received comments on the proposal and made changes in response to those comments. The Plan was adopted by the regional forester in April 1986.

Appellants exhausted their administrative appeals,[4] and now seek judicial review of the Plan as a final agency action within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (1994).[5] The complaint the appellants presented to the

---

[4]The NFMA and its regulations provide for extensive administrative review of a challenge to a LRMP. Since a LRMP is a decision of the regional forester, a challenge to a plan is appealed to the Chief of the Forestry Service. *See* 36 C.F.R. § 211.18(f)(1)(iii). The Chief responds to the challenge in a written decision. This decision is sent automatically to the Secretary of Agriculture, *see* 36 C.F.R. § 211.18(f)(2), who has discretion to review the Chief's decision. In this case, the Secretary declined to review the Chief's decision affirming the regional forester's adoption of the Plan.

[5]A federal statute provides that "[i]f the Secretary fails to decide the appeal [of a decision of the Forest Service] ..., the decision on which the appeal is based shall be deemed to be a final agency action for the purpose of [the Administrative Procedure Act]." Department of the Interior and Related Agencies Appropriations Act, 1993, Pub.L. No. 102-381, § 322(d)(4), 106 Stat. 1374, 1419 (1992) (16 U.S.C. § 1612 note).

The APA gives "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" a right to judicial review of that agency action. 5 U.S.C. § 702. Agency action is subject to judicial review only if it is "final agency action" or "[a]gency action made reviewable by statute." 5 U.S.C. § 704. Since the NFMA does not provide for judicial review of agency actions taken pursuant

district court alleges that several of the decisions made in the Plan violate the NFMA and its regulations as follows:  (1) the Plan designates too much land in the Forest as suitable for timber production;  (2) the Plan fails to take into account the possibility that the costs incurred by the Forest Service will exceed the revenues the Service receives from the timber companies;  (3) the Plan sets an "arbitrarily high" timber harvest level for the fifth decade of the Plan;  (4) the Plan fails to follow the directives of the Secretary of Agriculture's "San Juan" decision;[6]  (5) the Plan makes "arbitrary and capricious" assumptions about future timber harvest levels and future timber prices;  (6) the Plan fails to provide for animal and plant species diversity as required by the NFMA;  (7) in formulating the Plan, the Service failed to conduct species inventories as required by the NFMA;  and (8) the Plan fails to protect the Forest's visual resources as

_____

to the Act, we have jurisdiction over a challenge under the NFMA only if the agency action is final.

[6]The "San Juan" decision resolved administrative appeals of two separate LRMPs, and addressed the justifications needed in a LRMP when it proposes to expand a timber program in which costs to the Forest Service will exceed the revenues generated by the program.  *See* "Decision on Review of Administrative Decision by the Chief of the Forest Service Related to the Administrative Appeals of the Forest Plans and EISs for the San Juan National Forest and the Grand Mesa Uncompahgre, and Gunnison National Forest" (Dep't Agriculture, July 31, 1985) (described at 53 Fed.Reg. 26621 (1988)).  Appellants argue that the application of the San Juan decision to the Plan should be left to the district court once we have found that appellants have standing to challenge the Plan.  Appellees contend that the San Juan decision is not judicially enforceable.  We do not address these assertions, since we hold *infra* that appellants' challenges to the Plan are not ripe for judicial review.

required by the NFMA.[7]

Appellants seek a declaratory judgment that the Plan and the final environmental impact statement that accompanied the Plan violate the NFMA in the manner specified above. Assuming that the Plan and the impact statement are invalid, they ask that the district court remand the Plan to the Forest Service so that the Service can comply with the NFMA and its regulations.

After the parties joined issue, both sides moved for summary judgment. Appellees' motion replicated the assertion contained in its answer that the environmental groups lack standing to bring the claims at issue, and, moreover, that such claims are not ripe for judicial resolution. Appellees' motion alleged alternatively that the decisions made in the Plan comply with the NFMA and its regulations.

The district court noted the split of authority in the courts of appeals on whether claims such as the ones appellants present are justiciable; that is, whether such claims are ripe for judicial review, and, if so, whether any person has standing to bring them. The Seventh and the Ninth Circuits have held the justiciability requirements to be satisfied in cases similar to the

---

[7]Appellants' complaint consists of thirteen counts; many of the allegations recited above constitute separate counts. In addition to these allegations, the complaint asserts that the regulations promulgated by the Secretary for determining the forest land's economic suitability for timber production, *see* 36 C.F.R. § 219.14, violate the NFMA's requirement that the identification of economically unsuitable lands be based on an objective standard or rule of reason. *See* 16 U.S.C. § 1604(k). Although the district court did not specifically address appellants' standing to bring this claim, we read its order as determining that appellants lack standing to litigate this claim. Appellants do not appeal the district court's disposition of this claim; accordingly, we do not address it.

one here. *See Sierra Club v. Marita,* 46 F.3d 606 (7th Cir.1995); *Idaho Conservation League v. Mumma,* 956 F.2d 1508 (9th Cir.1992). The Eighth Circuit, however, has found that environmental-group plaintiffs lacked standing to bring a challenge similar to the one in this case. *See Sierra Club v. Robertson,* 28 F.3d 753 (8th Cir.1994). That court did not address the question whether the challenge presented was ripe for judicial review.

Finding the reasoning of the Eighth Circuit in *Robertson* persuasive, the district court held that the injury alleged by appellants was not imminent. Thus, appellants could not "have suffered an "injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not "conjectural" or "hypothetical." ' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted). Without such an injury, the district court held, appellants did not have standing to pursue their claims.

Because the appellants' injury was not imminent, the court also held that their claims were not ripe for judicial review. Further, the court found that dismissal of the action would cause little or no hardship to appellants. Determining that the appellants did not have standing to bring their claims, and that their claims were not ripe, the district court granted the appellees' motion for summary judgment.

II.

We review the district court's grant of summary judgment *de novo,* applying the same legal standards that bound the district

court. *See Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1377 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995). In making this determination, we view all evidence in the light most favorable to the non-moving party. *See Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir.1992). Summary judgment is appropriate in cases in which there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c).

In this case, the district court examined the appellants' claimed injuries through the lens of the standing doctrine as well as through the lens of the ripeness doctrine. Few courts draw meaningful distinctions between the two doctrines; hence, this aspect of justiciability is one of the most confused areas of the law. Because we find the framework of the ripeness doctrine more useful when evaluating injuries that have not yet occurred, such as those claimed by appellants here, we affirm the district court on that basis.

The confusion in the law of standing and ripeness is hardly surprising. Both doctrines focus initially on the injury to the person bringing the action. The Supreme Court has stated that the "injury in fact" prong of standing requires an injury that is both "concrete and particularized" and "actual or imminent." *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. at 2136. Similarly, for the controversy to be ripe, the complained-of injury must be immediate or imminently threatened. There is an important distinction between the two doctrines, however. When determining standing, a court asks whether these persons are the proper *parties* to bring the suit, thus focusing on the qualitative sufficiency of

the injury and whether the complainant has personally suffered the harm. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.1 (1989). When determining ripeness, a court asks whether this is the correct *time* for the complainant to bring the action. *See id.* In the instant case, the timing of the suit, rather than the propriety of appellants as plaintiffs, causes justiciability problems.

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" as well as "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab. v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). A case is not " 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 891, 110 S.Ct. 3177, 3190, 111 L.Ed.2d 695 (1990). In deciding whether an issue is ripe, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab.,* 387 U.S. at 149, 87 S.Ct. at 1515.

Appellants argue that the decisions made in the Plan are couched in language that makes mandatory further site-specific action. Appellees respond that the Plan is not the final arbiter

of any on-the-ground actions.  They contend that there is another level of decisionmaking that determines precisely what site-specific action will be taken pursuant to the Plan.  Thus, appellees assert, the Plan only sets timber harvest goals and possible future timber harvest levels;  no harvesting will be done and, therefore, no "injury" can occur, until after the second-stage decisions are made.

We are persuaded by appellees' contention that no site-specific action will be taken pursuant to the Plan without a second stage of decisionmaking;  "subsequent discretionary actions require separate and independent decisionmaking" before any site-specific action will occur. *National Wildlife Fed'n,* 497 U.S. at 892 n. 3, 110 S.Ct. at 3190 n. 3.  Appellees concede that appellants can challenge both the site-specific action as well as the Plan-level decision(s) underlying the specific action at the second stage.[8]  Our opinion is dependent on that concession.  Until such actions have been proposed, however, there is no controversy for us to resolve.  We have no doubt that some decisions in the Plan make an injury to the appellants more likely.  "More likely," however, does not make the injury imminent enough for purposes of judicial decisionmaking.  We do not yet know when or how an injury to the appellants will occur, and this factual underpinning is

---

[8]As the district court stated, "[This] court's determination that Plaintiffs lack standing at this time to assert their claims made herein is *ipso facto* a determination that at such time as the Plan is implemented in a specific way, it will not be too late to complain." *Wilderness Soc'y v. Alcock,* 867 F.Supp. 1026, 1041 (N.D.Ga.1994).

vital to a full-fledged judicial review of the Plan.[9]  Thus, until a site-specific action has been proposed, appellant's claimed injury is not ripe for judicial review.  *See, e.g., Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 808 (11th Cir.1993) (finding that timber companies do not have standing to challenge an amendment to a LRMP because the claimed injury would be affected by future site-specific analyses).

AFFIRMED.

---

[9]Appellants assert in their briefs (and maintained at oral argument) that timber is currently being harvested in the Forest on lands and in ways that violate the NFMA.  Appellants did not, however, amend their complaint to include challenges to any site-specific action, and thus, for the purposes of this appeal, we presume that no site-specific action has occurred.