United States Court of Appeals,

Eleventh Circuit.

No. 96-2068.

Stephen M. MILLER, Plaintiff-Appellee,

American Express Tax and Business Services, Incorporated, Plaintiff-Appellee-Cross-Appellant,

v.

George STUART, Secretary, as Head of the Florida Dept. of Business and Professional Regulation;  John P. Baumann, Jr.;  Charles H. Calhoun;  Shaun M. Davis;  Malcolm R. Duggan;  Mirtha V. Martin;  Francisco J. Paredes;  Andrea A. Spottswood;  David MacNamara;  Zoya W. Phillips, Defendants-Appellants-Cross-Appellees.

July 30, 1997.

Appeals from the United States District Court for the Northern District of Florida. (No. 94-CV-40526-MMP), Maurice M. Paul, Judge.

Before DUBINA and BLACK, Circuit Judges, and O'KELLEY[*], Senior District Judge.

BLACK, Circuit Judge:

Stephen M. Miller, a Certified Public Accountant (CPA) employed by American Express Tax and Business Services, Inc. (American Express), presents a First Amendment challenge to the State of Florida's regulation of public accountancy.  The State's regulatory scheme prevents Miller from disclosing his CPA license to the public while performing accounting and tax services because he is employed by American Express, a firm not owned by CPAs. On cross-motions for summary judgment, the district court granted summary judgment in favor of Miller and dismissed American Express.  We affirm the grant of summary judgment in favor of Miller, but reverse the district court's dismissal of American Express.

I. BACKGROUND

A. *Procedural History*

On October 19, 1994, Miller and American Express filed an action against George Stuart, the Secretary of the Florida Department of Business and Professional Regulation, and members of

---

[*]Honorable William C. O'Kelley, Senior U.S. District Judge for the Northern District of Georgia, sitting by designation.

the Florida Board of Accountancy (collectively "the State of Florida" or "the Board"). They sought a declaration that the State of Florida's statutory scheme violates both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. On November 23, 1994, the district court denied motions filed by Miller and American Express for a temporary restraining order and a preliminary injunction. After discovery was completed, the parties filed cross motions for summary judgment. On December 11, 1995, the district court entered an order granting Miller's motion for summary judgment with respect to his First Amendment claim, denying the State's motion for summary judgment, and dismissing American Express. The State of Florida appeals the grant of summary judgment in favor of Miller, and American Express cross appeals its dismissal.

B. *Factual Background*

Appellee Miller holds an active CPA license in the State of Florida and is the Managing Director of American Express in Tampa, Florida. American Express performs tax, bookkeeping, and accounting services for the public through its regional offices in 26 states. As American Express is a wholly-owned subsidiary of the publicly traded American Express Company, it is neither a professional service corporation nor owned entirely by CPAs (hereinafter "non-CPA firm"). Therefore, neither American Express nor its employees are eligible to practice public accountancy, i.e., provide public accounting services. *See* Fla. Stat. ch. 473.309 (1993) (confining public accountancy to CPA-owned partnerships, professional service corporations, and limited liability companies).[1] American Express, nevertheless, lawfully employs CPAs to perform accounting and

---

[1]In relevant part, chapter 473.309, provides:

> (2) A corporation shall not engage in the practice of public accounting in this state unless:
>
> (a) It is a professional service corporation duly organized in this or any other state;
>
> (b) Each shareholder of the corporation is licensed as a certified public accountant in some state and is principally engaged in the business of the corporation;
>
> (c) The principal officer of the corporation and any officer or director having authority over the practice of public accounting by the corporation is a certified public accountant in some state;

tax services. These services fall within the types of services enumerated in the definition of public accountancy in Fla. Stat. ch. 473.302(5)(b) (Supp.1994) (hereinafter "accounting and tax services").[2] American Express' provision of these services, however, does not constitute public accountancy because neither American Express nor its CPA employees disclose to the public that these services are performed by CPAs. *See id.* Accordingly, American Express' CPA employees need not meet the regulations on public accountancy,[3] and they provide the same unregulated accounting and tax services that non-CPAs lawfully provide.[4] *See id.; see also* Fla. Stat. ch. 473.322(1)(c)

> (d) At least one shareholder of the corporation, and each shareholder, director, and officer domiciled in this state having authority over the practice of public accounting by the corporation, is a certified public accountant and holds an active license in this state;
>
> (e) It is in compliance with rules adopted by the board pertaining to minimum capitalization and adequate public liability insurance; and
>
> (f) It is currently licensed as required by s. 473.3101.

Fla. Stat. ch. 473.309. The Board enforces this regulation through its firm licensure requirement. *See* Fla. Stat. ch. 473.3101 (1993).

[2]In relevant part, chapter 473.302 provides:

> (5) "Practice of," "practicing public accountancy," or "public accounting" means:
>
> ....
>
> (b) Offering to perform or performing for the public one or more types of services involving the use of accounting skills, or one or more types of management advisory or consulting services, by any person holding himself or itself out as a certified public accountant or a firm of certified public accountants, including the performance of such services by a certified public accountant in the employ of a person so holding himself or itself out.

Fla. Stat. ch. 473.302.

[3]The regulations on public accountancy require a CPA to: (1) practice in the form of a proprietorship, a partnership, a professional service corporation, or a limited liability company owned entirely by CPAs, Fla. Stat. ch. 473.309; (2) not pay or accept commissions, Fla. Stat. ch. 473.3205 (1993); (3) not accept contingent fees, Fla. Stat. ch. 473.319 (1993); and (4) meet Board promulgated independence and competence standards, Fla. Stat. ch. 473.315 (1993).

[4]American Express' CPA employees' services are, nevertheless, indirectly regulated to the extent that CPAs remain subject to disciplinary action by the Board for: (1) being convicted of a crime which directly relates to their ability to practice public accountancy; (2) knowingly filing false reports, failing to file reports as required by state or federal law, or obstructing their filing;

(Supp.1994).

C. *The First Amendment Claim*

1. *Appellee Miller*

In his complaint, Miller sought to vindicate an asserted First Amendment right to disclose his CPA designation to current and prospective clients, including the right to place his CPA designation on business cards, letterheads, and written advertisements. Such advertisement of the fact of licensure would constitute "holding out" as a CPA within the meaning of Fla. Stat. ch. 473.302(6).[5] In turn, Miller's holding out as a CPA while performing accounting and tax services for the public would constitute public accountancy. *See* Fla. Stat. ch. 473.302(5)(b). The Board would then have the ability to revoke his license for unlawfully practicing public accountancy at American Express, a non-CPA firm. *See* Fla. Stat. chs. 473.323(1)(a), 473.323(3)(b). Miller, therefore, sought to enjoin the State of Florida from enforcing its statutory scheme, asserting that it infringed upon his First Amendment right by preventing him from holding himself out as a CPA. Miller sought a declaratory judgment that the State of Florida may not prevent him from holding himself out as a CPA while performing accounting and tax services of the kind identified in Fla. Stat. ch. 473.302(5)(b), which he currently provides at American Express. Miller did not seek to have Fla. Stat. ch. 473.309, the statute that confines public accountancy to CPA-owned professional service corporations, invalidated. That is to say, Miller did not seek a right to provide public accountancy services that meet all the regulations on public accountancy, *see supra* note 3, except for those stated in Fla. Stat. ch. 473.309.

---

(3) advertising in a manner that is fraudulent, false, deceptive, or misleading; (4) performing any fraudulent act; or (5) failing to maintain good moral character. Fla. Stat. ch. 473.323 (Supp.1994).

[5]In relevant part, chapter 473.302 provides:

> (6) "Holding out" means advertising, as a part of a licensee's business activities, that the licensee is a certified public accountant when providing, or offering to provide, services or products to the public which involve the use of accounting skills or one or more types of management advisory or consulting services.

Fla. Stat. ch. 473.302.

2. *Cross-Appellant American Express*

In a similar manner, American Express wanted to inform its clients that it employed CPAs to perform accounting and tax services. As such disclosure would constitute the unlawful practice of public accountancy by a non-CPA firm, *see* Fla. Stat. ch. 473.302(5)(b), American Express and its officers would be subject to prosecution, *see* Fla. Stat. ch. 473.322. Consequently, American Express also sought a declaratory judgment that under the First Amendment, the State of Florida may not proceed against it for the unlawful practice of public accountancy.[6]

## II. STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo, applying the same legal standards used by the district court. *Parks v. City of Warner Robins,* 43 F.3d 609, 612-13 (11th Cir.1995). Where, as here, the facts related to the issue of standing are not in dispute, this Court reviews a district court's ruling that a party lacks standing de novo. *See Wilderness Soc'y v. Alcock,* 83 F.3d 386, 389 (11th Cir.1996).

## III. DISCUSSION

A. *Appellee Miller*

1. *District Court Holding and Issues on Appeal*

The district court found that this case implicated the First Amendment and that Appellee Miller's holding out constituted commercial speech. In applying the four-part standard of *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the district court further held that Florida's statutory scheme violates the First Amendment to the extent that it prevents Miller from holding himself out as a CPA at American Express. On appeal, the State of Florida maintains that this case does not implicate the First Amendment. Alternatively, the State of Florida contends that Miller's holding out is not protected commercial speech because it is misleading. The State of Florida further asserts that even if the speech in question is not misleading, the statutory scheme withstands constitutional scrutiny because the

---

[6]As the district court did not address the equal protection claims of Miller and American Express, those claims are not before us.

restrictions on speech are narrowly tailored and further substantial state interests.

2. *Whether this Case Implicates the First Amendment*

The Supreme Court has already found that an actively licensed CPA's use of the CPA designation constitutes commercial speech. *See Ibanez v. Florida Dep't of Bus. & Prof'l Regulation,* 512 U.S. 136, 142, 114 S.Ct. 2084, 2088, 129 L.Ed.2d 118 (1994) ("The Board correctly acknowledged that Ibanez' use of the CPA and CFP designations was "commercial speech.' "); *see also Edenfield v. Fane,* 507 U.S. 761, 765, 113 S.Ct. 1792, 1797, 123 L.Ed.2d 543 (1993) (in-person solicitation by a CPA is commercial speech); *Peel v. Attorney Registration & Disciplinary Comm'n,* 496 U.S. 91, 99, 110 S.Ct. 2281, 2287, 110 L.Ed.2d 83 (1990) (an attorney's holding out as a Certified Civil Trial Specialist, a credential granted by the National Board of Trial Advocacy, is commercial speech).

The State of Florida nevertheless insists that Miller's holding out is not speech, but conduct, because holding out *in conjunction* with offering to perform or performing accounting and tax services for the public is considered the practice of public accountancy. *See* Fla. Stat. ch. 473.302(5)(b). The *Ibanez* decision did not resolve this precise issue. Sylvia Ibanez, a lawyer-CPA, had used her CPA designation in commercial advertising related to her legal practice, but had not licensed her professional service corporation with the Florida Board of Accountancy because she claimed that she was not practicing public accountancy. *Ibanez,* 512 U.S. at 138-40, 114 S.Ct. at 2086-88. The Board brought a disciplinary proceeding, asserting *inter alia* that Ibanez' holding out in conjunction with her performance of services involving the use of accounting skills—preparation of tax opinions, representation before the IRS, evaluation of tax consequences of transactions, and financial counseling and planning—meant that she was practicing public accountancy, *see* Fla. Stat. ch. 473.302(5)(b), in an unlicensed firm. *See* Brief for the Florida Dep't of Bus. & Prof'l Regulation at 14-19, *Ibanez v. Florida Dep't of Bus. & Prof'l Regulation,* 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994). The Board dropped this charge prior to the close of the administrative hearing, however. *Ibanez,* 512 U.S. at 140, 114 S.Ct. at 2087. Before the Supreme Court, the Board asserted that Ibanez' practice of public accountancy in an unlicensed firm was misleading. *See* Brief for the

Florida Dep't of Bus. & Prof'l Regulation at 19 n.7. In rejecting the Board's arguments, the Court held:

> To survive constitutional review, the Board must build its case on specific evidence of noncompliance. Ibanez has neither been charged with, nor found guilty of, any professional activity or practice out of compliance with the governing statutory or regulatory standards.... Notably, the Board itself withdrew the only charge against Ibanez of this kind, viz., the allegation that she practiced public accounting in an unlicensed firm.

*Ibanez,* 512 U.S. at 144 & n. 8, 114 S.Ct. at 2089 & n. 8 (citations omitted). The Supreme Court, therefore, did not address whether the First Amendment would have been implicated had the Board charged Ibanez with practicing public accountancy in an unlicensed firm. This case squarely presents the very question the Supreme Court reserved—whether the First Amendment is implicated when the Board threatens prosecution of a CPA for holding out while performing accounting and tax services in an unlicensable non-CPA firm.

We reject the proposition that the State of Florida's statutory scheme is insulated from First Amendment review because it incorporates commercial speech into a class of regulated activity it refers to as public accountancy. "[A] court may not escape the task of assessing the First Amendment interest at stake" based on the label the state has placed upon the speech in question. *See Bigelow v. Virginia,* 421 U.S. 809, 826, 95 S.Ct. 2222, 2235, 44 L.Ed.2d 600 (1975). Whether Miller holds out in conjunction with performing accounting and tax services or performing other services, the fact remains that his holding out conveys significant information about his compliance with the education, competence, and character requirements for a CPA license. *See Peel,* 496 U.S. at 101, 110 S.Ct. at 2288. Holding out to prospective and current clients in both situations allows Miller to advertise his qualifications, "educate the market and stimulate demand for his product or service." *Edenfield,* 507 U.S. at 766, 113 S.Ct. at 1797. Nor are we persuaded that holding out loses its protections under the First Amendment because it is a "subordinate component" of Miller's business transaction of performing accounting and tax services. *See Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 457, 98 S.Ct. 1912, 1919, 56 L.Ed.2d 444 (1978). Guided by this Supreme Court precedent, we conclude that a CPA's holding out while offering to perform or performing accounting and tax services for the public constitutes commercial speech and therefore warrants protection

under the First Amendment.[7]

3. *The Central Hudson Standard*

As holding out in offering to perform or performing accounting and tax services constitutes commercial speech, the State of Florida must justify its restrictions under the *Central Hudson* standard. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Under *Central Hudson* and its progeny, the state must show that:

(a) the speech concerns unlawful activity or is misleading. *Edenfield,* 507 U.S. at 768, 113 S.Ct. at 1799. The government may completely ban false and inherently misleading commercial speech. *Id.;*

(b) it has a substantial interest in proscribing speech. *Edenfield,* 507 U.S. at 769, 113 S.Ct. at 1799. "[T]he *Central Hudson* standard does not permit us to supplant the precise interests put forward by the State with other suppositions." *Id.* at 768, 113 S.Ct. at 1798;

(c) the regulation advances the asserted state interest in a direct and material way. *Edenfield,* 507 U.S. at 770, 113 S.Ct. at 1800. "[T]he regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *Id.* (quoting *Central Hudson,* 447 U.S. at 564, 100 S.Ct. at 2350); and

(d) the extent of the restriction is in reasonable proportion to the interest served. *Board of Trustees of the State Univ. of N.Y. v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 3035, 106 L.Ed.2d 388 (1989).

In shouldering its burden, a state may not rely on "speculation or conjecture," but must "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield,* 507 U.S. at 770-71, 113 S.Ct. at 1800. This requirement is critical, since otherwise "a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 487, 115 S.Ct. 1585, 1592, 131 L.Ed.2d 532 (1995) (quoting *Edenfield,* 507 U.S. at 771, 113 S.Ct. at 1800).

a. *Whether the Speech Concerns Unlawful Activity or is Misleading*

The State of Florida concedes that Miller's holding out as a CPA conveys truthful information about his compliance with the predicate requirements for obtaining a CPA license.

---

[7]*But see Johnson v. California State Bd. of Accountancy,* 72 F.3d 1427, 1432-33 (9th Cir.1995) (statutory scheme that prohibited a CPA from accepting commissions in the performance of accounting and tax services only if he held out did not implicate the First Amendment even though it prevented the CPA from holding out in his accountancy practice).

Nonetheless it asserts that it is misleading because he is impressing the consumer that he is providing regulated public accounting services associated with CPAs when in fact he is providing services that any non-CPA can provide. The district court found that the State of Florida failed to produce any empirical evidence showing consumers will be misled in the manner the State suggests.

The district court's finding is supported by the record. The State of Florida relied solely on "speculation and conjecture" to support its assertion that Miller's holding out while performing accounting and tax services would mislead the public into believing that he is providing regulated public accounting services. *See Edenfield,* 507 U.S. at 770, 113 S.Ct. at 1800. The State of Florida has failed to carry its burden under the first part of the *Central Hudson* inquiry.

b. *Whether the State has a Substantial Interest in Proscribing Speech*

The State of Florida asserted the following interests at the district court: "first, protecting consumers from unqualified accountants through maintenance of a professional and regulatory scheme over individual accountants and accounting firms, and the accounting services they provide; and second, ensuring the accuracy of commercial information disseminated to consumers." The district court credited the State's interests as substantial. We assume, without deciding, that the State's interests are substantial.

c. *Whether the Regulation Advances the State Interest in a Direct and Material Way*

The district court assumed, without deciding, that the statutory scheme advanced the State's asserted interests in a direct and material way. We also assume, but do not decide, that the evidence presented by the State of Florida sufficed to carry its burden of proving that its interests are directly and materially advanced.

d. *Whether the Extent of the Restriction is in Reasonable Proportion to the Interest Served*

The district court found that the State of Florida had not carried its burden of demonstrating that its statutory scheme was narrowly tailored because "a disclaimer or some other form of additional disclosure [would constitute] a narrower limitation that would allow Plaintiff Miller to hold himself out as a CPA in a non-misleading manner." The State of Florida nevertheless insists that there is a reasonable fit between the statutory scheme and its substantial interests. According

to the State of Florida,

> Miller would be in a worse position if Florida did not utilize a "holding out" trigger. If Florida found that Miller and other CPAs were engaged in the practice of public accounting merely because they have a CPA license and are doing accounting and tax work, the result would be that Miller and other CPAs could not work for firms like [American Express] as licensed CPAs because they would be providing [public accounting services] in an [unlicensable non-CPA] firm. Thus, Florida's definition of public accounting actually has the effect of narrowing the scope of regulation.

While the State of Florida describes its statutory scheme as narrow, its argument relies on faulty "greater-includes-the-lesser" reasoning. That is to say, the State is asserting that if it can wholly prohibit Miller from performing accounting and tax services for the public at a non-CPA firm, surely it can allow him to perform these services subject to the limitation that he may not hold out. The government, however, may not justify its regulation of speech as a "reasonable choice" by comparing it to a more intrusive non-speech regulatory alternative. *44 Liquormart, Inc. v. Rhode Island,* --- U.S. ----, ----, 116 S.Ct. 1495, 1510-12, 134 L.Ed.2d 711 (1996) (plurality opinion) (striking down a ban on alcohol price advertisement that was intended to promote temperance by causing higher alcohol prices because the state could promote its temperance goal through "obvious ... alternative forms of regulation that would not involve any restriction on speech"); *Coors Brewing Co.,* 514 U.S. at 489, 115 S.Ct. at 1593 (holding that a federal law prohibiting beer labels from displaying alcohol content violated the First Amendment because available alternatives—including directly limiting the alcohol content of beers—could have achieved the government's aim without suppressing speech). The danger in accepting such an argument is that it would allow the state to use restrictions on commercial speech to shield its policies "from the public scrutiny that more direct, nonspeech regulation would draw." *44 Liquormart,* --- U.S. at ----, 116 S.Ct. at 1511 (plurality opinion). Therefore, the State's argument that it chose the suppression of commercial speech over a more intrusive nonspeech regulation of public accountancy is unavailing.

The State of Florida also asserts that, "[q]uite simply, Florida, along with other states, created the title, imbued it with meaning, and may decide the terms and conditions under which the title can be used." The fact that the State has chosen to license individuals to use the CPA title does not change the *Central Hudson* analysis. "Even though government is under no obligation to

provide a person, or the public, a particular benefit, it does not follow that conferral of the benefit may be conditioned on the surrender of a constitutional right." *44 Liquormart,* --- U.S. at ----, 116 S.Ct. at 1513 (plurality opinion). Accordingly, the State of Florida may not impose as a condition of licensure a requirement that is violative of the First Amendment.

Consequently, we hold that the State of Florida has failed to justify the speech restriction inherent in its statutory scheme, which completely prevents Miller from holding himself out as a CPA, because it has not shown the scheme to be narrowly tailored. As the State of Florida has failed to justify its statutory scheme under the *Central Hudson* standard, we hold that the statutory scheme is unconstitutional to the extent that it prevents Miller from holding himself out as a CPA while offering to perform or performing accounting and tax services of the kind identified in Fla. Stat. ch. 473.302(5)(b), which he currently provides at American Express, a non-CPA firm.

4. *District Court's Grant of Relief to Similarly Situated CPAs*

In structuring the relief requested by Appellee Miller on his First Amendment claim, the district court stated:

> 6. The Court holds that, as applied to Plaintiff Miller *and other similarly situated individuals,* the enforcement of Florida Statutes §§ 473.302(5), 473.309, and 473.322, violate[s] the First Amendment to the Constitution of the United States, to the extent that those laws prohibit *a CPA employed by an unlicensed accounting firm* and performing only nonattest business services of the kind identified in Florida Statute § 473.302(5)(b) from truthfully informing clients or prospective clients that he or she is a CPA.

> 7. Defendants are permanently enjoined from enforcing Florida Statutes §§ 473.302(5), 473.309, and 473.322, to the extent that those laws prohibit *a CPA employed by an unlicensed accounting firm* and performing only nonattest business services of the kind identified in Florida Statute § 473.302(5)(b) from truthfully informing clients or prospective clients that he or she is a CPA. This injunction is to remain in full force and effect until further order of the Court.

(emphasis added). We note, however, that Cross-Appellant American Express' claim on behalf of its CPA employees was not before the district court and Appellee Miller did not initiate a class action suit seeking to vindicate the constitutional rights of similarly situated CPAs. Consequently, in granting relief to "similarly situated individuals," the district court improperly granted relief to persons who were not parties to the litigation. We therefore vacate the grant of summary judgment in favor of individuals other than Appellee Miller.

B. *Cross-Appellant American Express*

1. *District Court Holding and Issues on Appeal*

The district court concluded that American Express was neither challenging the State of Florida's prohibition on an unlicensed firm from holding itself out as an accounting firm nor seeking to hold itself out as an accounting firm. Consequently, the district court considered it unlikely that American Express would "be prosecuted for a constitutionally protected activity." Absent the threat of prosecution, the district court determined that American Express had not suffered injury-in-fact, one of the constitutional prerequisites for standing. *See United States v. Hays,* 515 U.S. 737, ----, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995). The district court therefore dismissed American Express for lack of standing. On appeal, American Express asserts that it has standing because it sought to vindicate a right to inform the public that it employs CPAs, as well as to shield itself from prosecution when its CPA employees hold out while performing accounting and tax services for the public.

2. *Whether American Express has Standing*

To demonstrate constitutional standing, a plaintiff must show injury-in-fact, a causal link between the injury and the conduct complained of, and that a favorable decision would redress his injury. *Hays,* 515 U.S. at ----, 115 S.Ct. at 2435. "A plaintiff stating that he intends to engage in a specific course of conduct arguably affected with a constitutional interest ... does not have to expose himself to enforcement to be able to challenge the law." *Jacobs v. The Florida Bar,* 50 F.3d 901, 904 (11th Cir.1995) (internal quotation marks omitted). Instead, a plaintiff can have standing where it is likely he will be prosecuted for engaging in a constitutionally protected activity. *Id.*

We find that American Express satisfies these requirements. American Express is suing to vindicate its asserted First Amendment right to commercially advertise the fact that the accounting and tax services it offers to the public are performed by its CPA employees. Were American Express to do so, it could be prosecuted for practicing public accountancy without a firm license. *See* Fla. Stat. ch. 473.302(5)(b) (a firm is considered to be engaged in public accountancy if it holds out its CPA employees in the provision of accounting and tax services to the public). Moreover,

were its CPA employees to hold out while performing accounting and tax services for the public, American Express as a separate corporate entity would also be engaged in the unlawful practice of public accountancy. *See Garcia v. Texas State Bd. of Medical Examiners,* 384 F.Supp. 434, 436 (W.D.Tex.1974) (noting that when a corporation employs a licensed physician to treat patients and itself receives the fee, the corporation is engaged in the practice of medicine), *aff'd,* 421 U.S. 995, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975). Consequently, American Express can be prosecuted either for exercise of its commercial speech rights or for its CPA employees' exercise of their commercial speech rights. American Express therefore has standing because its injury is real and the relief requested in this action would directly redress its injury.

## IV. CONCLUSION

For the reasons stated in this opinion, we affirm the grant of summary judgment in favor of Appellee Miller, vacate the grant of summary judgment in favor of individuals other than Appellee Miller, reverse the district court's dismissal of Cross-Appellant American Express, and remand the case to consider American Express' First Amendment claim.

AFFIRMED in part, VACATED in part, REVERSED in part, and REMANDED.