Elena V. SAMMONS, M.D., Plaintiff,

v.

NATIONAL COMMISSION ON CER-
TIFICATION OF PHYSICIAN AS-
SISTANTS, INC., Defendant.

No. Civ.A. 1:99–CV–2500–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 22, 2000.

Elena V. Sammons, M.S., San Antonio, TX, plaintiff pro se.

Charles Henry Ivy, Atlanta, GA, for defendant.

## ORDER

EVANS, District Judge.

This *pro se* civil § 1983 civil action, alleging violations of due process and equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution, is currently before the court on Defendant National Commission on Certification of Physician Assistants, Inc.'s ("NCCPA" or "Defendant") opposed motion to dismiss, Plaintiff Elena V. Sammons, M.D.'s ("Plaintiff") motions for class certification, for the appointment of counsel, and to proceed *in forma pauperis* ("IFP"), and Defendant's opposed motion for an enlargement of time to respond to Plaintiff's above motions and to order Plaintiff to serve papers.

The following facts are undisputed unless otherwise noted. Plaintiff is a foreign physician who graduated from a Russian medical school in 1986. She completed her residency in pediatrics, practiced as a pediatrician for three years, and completed a residency in anesthesiology. Plaintiff successfully passed the United States Medical Licensing Examination in 1997 and is currently certified from the Educational Commission for Foreign Medical Graduates, qualifying Plaintiff to begin residency training in the United States in any medical specialty.

While waiting for an open residency position, Plaintiff, who currently resides in Texas, allegedly contacted Defendant NCCPA in order to determine the steps necessary for her to obtain certification as a Physician's Assistant ("PA"), so as to be able to work as a PA in the interim. Defendant NCCPA is a private not-for-profit corporation headquartered in Norcross, Georgia. The NCCPA, in conjunction with the National Board of Medical Examiners and a number of governmental and medicinerelated organizations which formed the NCCPA in the early 1970s, administers a nationwide testing and certification program for physician assistants. In order to obtain NCCPA certification as a physician's assistant, the applicant must meet a threshold eligibility requirement, graduation from an accredited PA training program, and then pass a standardized certification examination administered by the defendant corporation. When a certificate is issued, it remains valid for six years, but must then be renewed by taking and passing a renewal examination. In addition, during the six-year life of a certificate, the holder is required to re-register it every two years by furnishing proof that he or she has completed at least the requisite hours of continuing medical education.

Plaintiff alleges that the NCCPA informed Plaintiff that it would not consider her for certification as a PA and that she was not eligible to take Defendant's examination. It is undisputed that Plaintiff never applied for certification or to take Defendant's examination. Defendant states that Plaintiff is correct that she is not eligible to take Defendant's examination or participate in its certification program because she did not graduate from a PA training program accredited by the nation-

al organization which evaluates and accredits training programs for PA's.

Plaintiff contends that Defendant's refusal to consider a foreign physician for certification as a PA is unreasonable, arbitrary and capricious and violates her Fifth Amendment rights. Plaintiff seeks damages and an order from this court directing Defendant to consider Plaintiff's qualifications and experience in deciding whether to test or certify her as a PA.

Defendant seeks to dismiss the instant action for failure to state a claim upon which relief can be granted. Defendant argues that, as it is a private corporation and not a state actor, Plaintiff cannot maintain a § 1983 action against it and therefore the case must be dismissed. Plaintiff responds that Defendant is a state actor under the public function and nexus/joint action tests.

■ Though not raised by Defendant, in light of the fact that Plaintiff never actually applied for certification or to take the examination, this court must first consider whether this action is ripe for adjudication. "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir.1997). Courts must resolve "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Id.* (internal quotations and citations omitted).

■ As ripeness goes to this court's subject matter jurisdiction, the court must consider the question *sua sponte*. *Villas of Lake Jackson, Ltd. v. Leon County*, 906 F.Supp. 1509, 1513 (N.D.Fla.1995) (citing, *Reahard v. Lee County*, 30 F.3d 1412, 1418

(11th Cir.1994)); *See also Employers Mut. Cas. Co. v. Evans*, 76 F.Supp.2d 1257, 1259 (N.D.Ala.1999) ("[A] federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1574 n. 7 (11th Cir.1989).

■ When determining ripeness, a court asks whether this is the correct time for the complainant to bring the action. *See Wilderness Soc'y v. Alcock*, 83 F.3d 386, 390 (11th Cir.1996). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal citation omitted).

■ The court finds that this court does not have subject matter jurisdiction over the instant action because, as Plaintiff never applied to take Defendant's examination or for certification, she has not suffered an injury in fact, and this claim is not ripe for adjudication. Plaintiff's mere assertion that she contacted Defendant to obtain certification and was "advised" by the "NCCA" that it would not test or consider a foreign doctor for certification is insufficient to constitute a controversy. [Plaintiff's complaint at ¶ 4]. *See Digital*, 121 F.3d at 590 ("At a minimum, the plaintiff had the obligation to obtain a conclusive response from someone with the knowledge and authority to speak for the City regarding the application of the zoning scheme to Plaintiff's proposal to establish an adult bookstore." The Assistant Zoning Technician's alleged statement to Plaintiff's representatives that "the City of Plantation does not allow such use" of property as an adult book store was not sufficient to create a concrete controversy).[1]

■ Moreover, the court notes for purposes of judicial economy and in defer-

---

1. In *Digital*, Digital Properties, Inc. (Digital) sought to establish an adult book and video store in the City of Plantation, Florida. Prior to Digital's contractual agreement to pur-

chase the property, the City reclassified the property as a "B–3P" zone, a general business district, with a master list of business uses which did not expressly identify adult

ence to Plaintiff's *pro se* status, that even if this claim were ripe, as Defendant is not a state actor and does not act under color of state law, Plaintiff cannot state a claim under the Civil Rights Act upon which relief may be granted. To succeed on her constitutional claims, Plaintiff must show that Defendant is a state actor and that its conduct was state action, because the Fifth and Fourteenth Amendments "erect[ ] no shield against merely private conduct, however discriminatory or wrongful." *Johnson v. Educational Testing Service*, 754 F.2d 20, 23 (1st Cir.1985).

The court agrees with Defendant that the instant case is on all fours with *Gilliam v. National Com'n for Certification of Physician Assistants, Inc.*, 727 F.Supp. 1512 (E.D.Pa.1989), *aff'd*, 898 F.2d 140 (3rd Cir.1990), *cert. denied*, 495 U.S. 920, 110 S.Ct. 1950, 109 L.Ed.2d 312 (1990). In *Gilliam*, plaintiff was employed as a PA for many years. Plaintiff graduated from an accredited educational institution and took and passed the NCCPA examination. He allowed his certificate to lapse at the end of its six-year life, because he was entering military service, and could work as a physician assistant in the army without current certification. When plaintiff left military service in 1986, he sought to revive his NCCPA certificate; however,

he was informed that he would be required to take and pass the same examination as a new applicant, rather than the renewal examination. Plaintiff was re-tested in 1987, and although he had been continuously employed as a physician assistant for more than 12 years, he failed the test. As a result, he was unable to obtain a renewal of his Pennsylvania license. After denial of certification, plaintiff sued the NCCPA, among others, for violations of his due process and equal protection rights seeking injunctive relief and damages. The court in *Gilliam* determined that:

> Plaintiff's claims against NCCPA under the Civil Rights statutes are easily resolved: although its certifications are relied upon by many states in their licensing decisions, NCCPA is a private organization. It receives no financial support from any government, and it operates in all respects on a completely independent basis. In short, it is not a state actor, and does not act under color of state law within the meaning of the Civil Rights Act. Even if plaintiff were able to allege that his constitutional rights have been violated by the NCCPA, he would have no claim cognizable in this court for such constitutional violation.

*Id.* 727 F.Supp. at 1514.[2] Defendant is a private organization which does not qualify

---

book or video stores as either permitted or prohibited. Upon reaching the zoning department, Digital representatives spoke with Assistant Zoning Technician Kris Sorrentino. They informed Sorrentino of Digital's intent to change the use of the building from a restaurant to an adult book and video store. Digital contends that Sorrentino told the representatives that "the City of Plantation does not allow such use" and refused to accept the plans. The City asserts that Sorrentino informed them that the Code of Ordinances did not expressly permit such a use in a B–3P zone. Digital did not dispute, that Sorrentino then advised Digital's representatives to speak with Manny MacLain, Plantation's Director of Building and Zoning, in part because the scope of her job did not encompass accepting building plans over the counter. Following this exchange with Sorrentino, the men immediately left without consulting with MacLain. On September 27, 1995, Digital filed

an action in the United States District Court averring that Plantation's zoning scheme was unconstitutional, both facially and as applied. Digital contended that Sorrentino's alleged statement impaired its constitutional rights and constituted injury-in-fact. Digital also sought a preliminary injunction prohibiting Plantation from enforcing the Code of Ordinances to prevent Digital from opening its business. The Eleventh Circuit held that "Digital's primary contention posits that Plantation unconstitutionally applied its zoning regulations to preclude Digital from conducting business as an adult-oriented enterprise in Plantation. The actions of Digital's representatives show that Digital's presumption of constitutional infirmity bred impatience and prompted it to file an unripe claim."

2.  The court in *Gilliam* went on to state:
    I hasten to add that plaintiff's own allegations make clear that no constitutional vio-

as a state actor and does not act under color of state law within the meaning of the Civil Rights Act. Defendant receives no funding, fees, revenue or financial benefit from any state or federal government and it operates in all respects on a completely independent basis. Therefore, Plaintiff cannot state a claim upon which relief may be granted.[3] *See Johnson*, 754 F.2d at 24 (1st Cir.1985) (finding that ETS, which administers a national test for law school applicants for admissions decisions and tests teachers for state licensing decisions is not a state actor).

Accordingly, this action is hereby DISMISSED for want of subject matter jurisdiction. Defendant's motions to dismiss [# 4], for an enlargement of time to respond to Plaintiff's motions [# 8–1], and to order Plaintiff to serve papers [# 8–2] are hereby DISMISSED AS MOOT. Plaintiff's motions for class certification [# 6–1], for appointment of counsel [# 6–2], and to proceed *in forma pauperis* [# 7] are also hereby DISMISSED AS MOOT.

lation has occurred. He has no vested right to certification, no property entitlement to renewal of his certification or of his license which could form the basis of a claim for violation of due process; and, in any event, he was accorded due process. He has no valid claim under the Equal Protection clause, because he has been treated in precisely the same manner as all others similarly situated; moreover, no racial or other invidious discrimination is, or could be, alleged.

*Id.*

3. Plaintiff contends that because many states only require a NCCPA certificate for a PA license, Defendant is performing a public function, or is involved in a joint action/nexus with the state. Defendant is not a state actor under either the public function test or the nexus/joint-action test. "The public function test is narrow, covering private actors who perform functions that are traditionally the exclusive prerogative of the state." The "mere showing that a private person performs a public function is not enough to establish state action." *Langston v. ACT*, 890 F.2d 380, 384 (11th Cir.1989). Therefore Defendant's assumption of this public function, does not render it a state actor under the public function test. *See Id.* at 384–385 (Where student, whose college test scores were canceled due to suspected cheating, brought action against ACT, a national testing company, for violation of his 14th Amendment due process rights, the Eleventh Circuit found that fact that both public and private institutions rely on ACT to evaluate students for admissions, ACT's taking on this public function, does not make it a state actor under the public function test); *See also Arlosoroff v. NCAA*, 746 F.2d 1019, 1020–21 (4th Cir.1984) (Though the NCAA introduces some order into the conduct of its programs and enforces uniform rules of eligibility, "the fact that NCAA's regulatory function may be of some public service lends no support to the finding of state action, for the function is not one traditionally reserved to the state").

Moreover, under the nexus/joint-action test, the court determines whether the state has intertwined itself with the private actor to such an extent that the state was a joint participant in the enterprise. The very nature of Defendant is to serve as an autonomous body to evaluate students without external influence. *See Langston v. ACT*, 890 F.2d at 385 ("[P]laintiff has failed to show that the University of Alabama, or any other agency of a state, has exerted influence over ACT's security decisions"). Therefore, Plaintiff cannot meet the nexus/joint action test as well.