SIERRA CLUB; Jerry Williams; Defenders of the Ouachita Forest; Sherry Balkenhol; Bill Greer; Stan Heard; Plaintiffs–Appellants,

Ouachita Watch League; Concerned Citizens, of Hot Springs; Beth Johnson; Intervenors–Appellants,

State of Arkansas, Intervenor,

v.

F. Dale ROBERTSON, Chief, USDA Forest Service; John E. Alcock; John M. Curran, Supervisor, Ouachita National Forest; Larry Theivagt; George Landrum; Paul Fuller; Don Monk; John Archer; James Watson; Robert Raines; Douglas Webb; Eugene Hayes, in his official capacity as Fourche District Ranger, USDA Forest Service; Defendants–Appellees.

Arkansas Forestry Association; Ouachita National Forest Timber Purchasers Group; Region 8 Forest Service Timber Purchasers Council, Intervenors–Appellees.

SIERRA CLUB; Jerry Williams; Defenders of the Ouachita Forest; Sherry Balkenhol; Bill Greer; Stan Heard; Plaintiffs,

Ouachita Watch League; Concerned Citizens, of Hot Springs; Beth Johnson; Intervenor,

State of Arkansas, Intervenor–Appellant,

v.

F. Dale ROBERTSON, Chief, USDA Forest Service; John E. Alcock; John M. Curran, Supervisor, Ouachita National Forest; Larry Theivagt; George Landrum; Paul Fuller; Don Monk; John Archer; James Watson; Robert Raines; Douglas Webb; Eugene Hayes, in his official capacity as Fourche District Ranger, USDA Forest Service; Defendants–Appellees.

Nos. 92–3701, 92–3796.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1993.

Decided June 23, 1994.

Mary Rowlins, Mena, AR, argued, for appellant.

Robert Klarquist, Washington, DC, argued (Myles E. Flint, Martin W. Matzen, David F. Shuey and Robert L. Klarquist, on the brief), for Federal appellees (Searcy W. Harrell, Jr., Camden, AR, and Steven P. Quarles and Thomas R. Lundquist, Washington, DC, on the brief), for Timber appellees.

Before BOWMAN, WOLLMAN, and MAGILL, Circuit Judges.

BOWMAN, Circuit Judge.

The Sierra Club and various other organizations and individuals (the Sierra Club), together with the State of Arkansas, sought judicial review of the United States Forest Service's Amended Land and Resource Management Plan for the Ouachita National Forest (the Plan). As part of this litigation, the Sierra Club petitioned the District Court[1] for a preliminary injunction barring the Forest Service from proceeding with two proposed timber sales in the Ouachita. The District Court denied a preliminary injunction with respect to both of the proposed

---

**1.** The Honorable Morris Sheppard Arnold, United States District Judge for the Western District of Arkansas. On May 26, 1992, Morris Sheppard Arnold became a United States Circuit Judge for the Eighth Circuit Court of Appeals.

sales and, in a later review of the merits of the Plan, granted the Forest Service's motion for summary judgment. The Sierra Club and the State of Arkansas appeal these orders.

## I.

The Ouachita National Forest consists of approximately 1.6 million acres located in west-central Arkansas and southeast Oklahoma. Pursuant to a number of interconnected congressional directives, the Secretary of Agriculture is entrusted with the responsibility of administering vast expanses of national forests.[2] Among these is the Ouachita.

### A.

The National Forest Management Act (NFMA), 16 U.S.C. §§ 1600–1614 (1988 & Supp. IV 1992), directs the Secretary to "develop, maintain, and, as appropriate, revise land and resource management plans [LRMPs] for units of the National Forest System." 16 U.S.C. § 1604(a) (1988). An LRMP must establish the overall management direction for the forest unit for ten to fifteen years. Thus, an LRMP is, in essence, a programmatic statement of intent that establishes basic guidelines and sets forth the planning elements that will be employed by the Forest Service in future site-specific decisions.

In preparing an LRMP, the Forest Service must comply with the myriad concurrent statutes or regulations that NFMA, by direct or indirect reference, incorporates. Section 6(e)(1) of NFMA, 16 U.S.C. § 1604(e)(1) (1988), mandates that LRMPs provide for multiple use and sustained yield of the products and services of the National Forest System unit consistent with the Multiple–Use Sustained–Yield Act, 16 U.S.C. §§ 528–531 (1988). This Act requires that the national forests "be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528.

Moreover, the LRMPs must be developed in compliance with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347 (1988 & Supp. IV 1992). NEPA requires an environmental impact statement (EIS) from all agencies contemplating "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C)(i) (1988). Accordingly, the regulations promulgated by the Forest Service provide that an LRMP must be accompanied by a draft and final EIS. 36 C.F.R. § 219.10(b) (1993).

The Forest Service has issued regulations pursuant to NFMA. *See id.* §§ 219.1–.29 (1993); *see generally Citizens For Envtl. Quality v. United States*, 731 F.Supp. 970, 977–78 (D.Colo.1989). These regulations describe the method for developing an LRMP. Procedurally, this involves a two-stage process. First, a team under the command of the Forest Supervisor develops a proposed LRMP along with a draft and final EIS. 36 C.F.R. § 219.10(a)–(b). To satisfy NEPA, plan drafters must formulate and evaluate a broad range of alternative management scenarios with the goal of "identifying the alternative that comes nearest to maximizing net public benefits." *Id.* § 219.12(f). The Regional Forester then reviews the proposal and either approves or disapproves it. *Id.* § 219.10(c). An approved plan and final EIS are supplemented by the Regional Forester's record of decision.

At stage two, individual site-specific projects are proposed and assessed using the LRMP. The Forest Service must ensure that all projects are consistent with the plan. 16 U.S.C. § 1604(i) (1988). Additional NEPA analysis is conducted to determine the effects of the specific project and to consider alternative actions. *See* 36 C.F.R. § 219.16.

### B.

The LRMP and accompanying final EIS for the Ouachita National Forest were released in 1986. The Forest Service issued the Plan and final supplement to the final

---

2. The National Forest System is administered within the Department of Agriculture by the U.S. Forest Service.

EIS (SEIS), which contained thirteen alternative management scenarios, in 1990. A land management alternative based on the Plan and the SEIS was selected in March 1990. A separate EIS concerning vegetation management in the Ozark, St. Francis, and Ouachita Mountains was prepared concurrently and adopted along with the Plan, as was a vegetation management program pursuant to a record of decision (VMROD) that amended the Plan's approach to herbicide use.

The Sierra Club filed an administrative appeal to the Forest Service regarding these decisions. The Chief of the Forest Service upheld the Plan, the SEIS, the vegetation management EIS, and the VMROD in April 1991. The Sierra Club and others then brought suit in the District Court for the Western District of Arkansas challenging the Plan as violative of the governing statutes and regulations.

In 1988 the Forest Service issued a Decision Notice that concluded that proposed timber sales slated for the Oden region of the Ouachita would be consistent with the 1986 Plan and its governing statutes. In 1990 the Forest Service issued a Decision Notice to the same effect regarding proposed timber sales in the Choctaw region of the Ouachita. None of the appellants filed a timely administrative appeal to the Oden sales. One of the appellants filed for administrative review of the Choctaw sales. When the 1986 Plan was revised in 1990, the Forest Service completed and released an Environmental Assessment Supplement that concluded that the proposed timber sales remained consistent with the Plan and its governing statutes and that no additional EIS was required.

In July 1991 the Sierra Club petitioned the court for a preliminary injunction barring the Forest Service from proceeding with the Oden and Choctaw sales, arguing that the Forest Service improperly denied the Club the right to an administrative review. The

motion was denied. In November 1991 the Sierra Club again moved for a preliminary injunction barring the Oden and Choctaw sales, this time arguing that the timber sales violated the statutes governing the Plan and were arbitrary and capricious. This motion also was denied. *Sierra Club v. Robertson,* 784 F.Supp. 593 (W.D.Ark.1991).

The two proposed timber sales aside, the Sierra Club sought judicial review of the Plan under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1988), making several claims that the Plan violates both NFMA and NEPA. After this Court ruled that the State of Arkansas had the right to intervene, *Sierra Club v. Robertson,* 960 F.2d 83 (8th Cir.1992), the District Court allowed the Arkansas Forestry Association and other entities (the Timber Appellees) to intervene on the side of the Forest Service. Both sides moved for summary judgment. On October 22, 1992, the District Court granted judgment in favor of the Forest Service and the Timber Appellees, finding that the Plan satisfies the directives of both NFMA and NEPA. *Sierra Club v. Robertson,* 810 F.Supp. 1021 (W.D.Ark.1992). On the same day, the District Court denied the Sierra Club's motion for leave to file a second supplemental complaint. This appeal followed.

■ The Sierra Club appeals the District Court's denial of the Club's motions for a preliminary injunction barring the Oden and Choctaw timber sales[3] and the court's denial of the Club's motion for leave to file a second supplemental complaint. In addition, the Sierra Club and the State of Arkansas argue that the District Court erred in granting summary judgment to the appellees on the merits of the Plan.

## II.

The notice of appeal filed in this case flags, *inter alia,* the District Court's denial of the Sierra Club's requests for a preliminary in-

---

**3.** An order denying a preliminary injunction is immediately appealable as a matter of right under 28 U.S.C. § 1292(a)(1) (1988). However, the decision to pursue an immediate appeal is left to the party's discretion, and a party may forgo an interlocutory appeal and instead raise the issue on appeal after final judgment. *Retired Chicago*

*Police Ass'n v. City of Chicago,* 7 F.3d 584, 608 (7th Cir.1993). There is no suggestion that the issues regarding the Oden and Choctaw timber sales have become moot by reason of supervening events. Thus, the judgments denying the requests for preliminary injunctions are properly before us.

junction as to the Oden and Choctaw timber sales. In its first attempt to enjoin the Oden and Choctaw sales, the Sierra Club argued that a preliminary injunction should issue because the Forest Service had denied the Club an administrative review of the decision to proceed with these sales. The District Court found that the Sierra Club had been provided with written notice of the administrative decision and had had forty-five days during which to perfect an appeal. The court also held that the Environmental Assessment Supplements were not "decisions" and thus were not appealable. *Sierra Club v. Robertson*, No. 90–2150 (W.D.Ark. July 5, 1991).

In its second attempt to enjoin the Oden and Choctaw sales, the Sierra Club argued that a preliminary injunction should issue because, for a variety of asserted reasons based primarily on the Sierra Club's interpretation of the governing statutes, the decisions of the Forest Service were arbitrary and capricious. The District Court held that the Sierra Club had forfeited all of its challenges to the Oden sales and all but one of its challenges to the Choctaw sales by failing to exhaust administrative remedies. Nevertheless, as an alternative basis for decision, the court went on to address the entirety of the motion for a preliminary injunction on the merits and held that the Forest Service had not acted arbitrarily or capriciously. *Sierra Club v. Robertson*, 784 F.Supp. at 611.

Although the Sierra Club listed these two orders in its notice of appeal, in its brief it appears to have abandoned the specific objections it made concerning the proposed timber sales at the District Court level and now exclusively focuses upon on its broader claims, not anchored to any particular proposed timber sales, challenging the Plan as violative of the governing statutes. Nevertheless, we carefully have reviewed the District Court's rulings as to the proposed timber sales. We are satisfied that no error of law appears and that the District Court did not abuse its discretion in denying the re-

quested preliminary injunction. Because we have nothing to add to the well-reasoned opinions of the District Court, the denial of the preliminary injunction is affirmed without further discussion.

### III.

The appellants argue that the District Court erred in granting summary judgment to the appellees on the merits of the Plan and reiterate their contentions that the Ouachita Forest Plan violates the dictates of NFMA and NEPA. The appellees, in addition to defending the District Court's decision, reassert their position, which the District Court rejected, that the Sierra Club and the State of Arkansas lack standing to challenge the Plan except in the context of its application to a particular proposed timber sale. We believe the appellees' position is well founded.

Article III of the United States Constitution restricts the "judicial power" of the United States to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "The power to declare the rights of individuals and to measure the authority of governments ... 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.' " *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982) (quoting *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892)). Although the "controversy" surrounding the cutting of timber in our national forests is in many ways "real, earnest and vital," it must be of the justiciable sort referred to in Article III in order for federal judicial power to be exercised appropriately.

The doctrine of standing [4] embodies both constitutional and prudential limits.

[T]he irreducible constitutional minimum of standing contains three elements: First,

---

4. Although the Sierra Club argues that the appellees failed to appeal the District Court's determination on standing and, thus, have waived the issue, it is elementary that standing relates to the justiciability of a case and cannot be waived by

the parties. *See Olin Water Servs. v. Midland Research Labs., Inc.*, 774 F.2d 303, 306 n. 3 (8th Cir.1985) (noting that the justiciability of a case must be considered by a court even where the parties have not raised the issue).

the plaintiff must have suffered an "injury in fact".... Second, there must be a casual connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant".... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal citations omitted) (*Defenders*); *Goos v. ICC,* 911 F.2d 1283, 1289 (8th Cir.1990).

■■■ The appellants' assertion of standing founders on the injury-in-fact component of standing. This component requires a showing of "an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Defenders,* —— U.S. at ——, 112 S.Ct. at 2136 (internal quotation marks and citations to quoted cases omitted). Complaints of environmental and aesthetic harms are sufficient to lay the basis for standing. *Sierra v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972); *Goos,* 911 F.2d at 1290. Nevertheless, alleging an injury to a cognizable interest is not enough. The appellants must make an adequate showing that the injury is actual or certain to ensue. Assertions of potential future injury do not satisfy the injury-in-fact test. "A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 1724, 109 L.Ed.2d 135 (1990). Because the appellants fail to assert an injury that is "certainly impending," they do not meet the requirements of Article III.

The mere existence of the Ouachita Forest Plan does not produce an imminent injury in fact. A forest plan, such as the Ouachita Plan, is a general planning tool. It provides guidelines and approved methods by which forest management decisions are to be made for a period of ten to fifteen years. Adoption of the Plan does not effectuate any on-the-ground environmental changes. Nor does it dictate that any particular site-specific action causing environmental injury must occur.

Indeed, before an environmental change can come about, several events must transpire. First, a site-specific action (*e.g.,* a timber sale) must be proposed and found to be consistent with the Plan. Next, the action is subject to NEPA and NFMA analysis and public comment. Finally, the Forest Service must adopt the action. Finding an environmental injury based on the Plan alone, without reference to a particular site-specific action, would "take[ ] us into the area of speculation and conjecture." *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974).

The Supreme Court has not addressed the question of whether plaintiffs challenging a forest plan have standing. However, the Court invariably has "insisted that the injury proceed with a high degree of immediacy," *Defenders,* —— U.S. at ——, 112 S.Ct. at 2139 n. 2, in order to avoid deciding a case in which no injury will occur. The decision of the Court in *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (*NWF*), illustrates the point. In *NWF,* environmental groups sought judicial review of the "program" by which the Bureau of Land Management classifies and administers public lands. The Court held that the plaintiffs did not have standing to challenge the program wholesale. In addition, the Court advised that even the individual classifications of public land by the BLM might not be sufficiently developed for judicial review. The Court stated that

the individual [classifications] of the BLM ... can be regarded as rules of general applicability (a "rule" is defined in the APA as agency action of "general or particular applicability *and future effect,*" 5 U.S.C. § 551(4) (emphasis added)) announcing, with respect to vast expanses of territory that they cover, the agency's intent to grant requisite permission for certain activities, to decline to interfere with other activities, and to take other particular action if requested. It may well be, then, that even those individual actions will not be ripe for challenge until some further agency action or inaction more immediately harming the plaintiff occurs.

*NWF*, 497 U.S. at 892, 110 S.Ct. at 3190. The classifications discussed in *NWF* are analogous to the Ouachita Forest Plan, and the Court's language bolsters our conclusion that the appellants lack standing to challenge the Plan except in the context of a proposed site-specific action.

■ Indeed, the appellants' situation is very similar to that of the plaintiffs in *NWF*. The Court noted that, under the challenged land classifications, before any mining activity could disturb the land the BLM had to act to approve a submitted mining plan. "If that permit is granted, there is no doubt ... that, in the course of an otherwise proper court challenge, [plaintiffs] would be able to call into question the validity of the classification order authorizing the permit." *Id.* at 892 n. 3, 110 S.Ct. at 3191 n. 3. Thus, when a site-specific action in the Ouachita Forest, such as a timber sale, is proposed, and all administrative appeals are exhausted, persons threatened by an imminent injury in fact may seek judicial review of the proposed action. At that time, such persons may assert that the proposed site-specific action is not consistent with the Plan, or that the Plan as it relates to the proposed site-specific action is inconsistent with the governing statutes, or both. Here, however, as we already have emphasized, appellants mount their attack on the Plan per se, their arguments devoid of reference to the particularities of any proposed site-specific action that might give rise to an injury in fact.

Similarly instructive is the decision of the Court in *Defenders*, in which the plaintiffs challenged the agency's interpretation of the Endangered Species Act, 16 U.S.C. §§ 1531–1544 (1988 & Supp. IV 1992), limiting the Act to projects in the United States and not extending it to projects in foreign countries. The plaintiffs averred that they previously had travelled to foreign countries where they had observed exotic species. They further alleged that projects funded by the United States now were threatening those species and that they harbored intentions of making future trips to those countries to observe those same species again. The Court held that "such 'some day' intentions" did not support a finding of an actual or imminent injury. *Defenders*, —— U.S. at ——, 112 S.Ct. at 2138.

Likewise, in *O'Shea* the Court held that standing was lacking where the plaintiffs, residents of a town, sought injunctive relief against a magistrate and a judge who the plaintiffs claimed were engaging in a pattern of discriminatory practices. Essentially, the plaintiffs asserted "that *if* [the plaintiffs] proceed[ed] to violate an unchallenged law and *if* they [were] charged, held to answer, and tried in any proceedings before [the defendants], they [would] be subjected to the discriminatory practices." *O'Shea*, 414 U.S. at 497, 94 S.Ct. at 676–77. In denying standing, the Court held that the allegations lacked "sufficient immediacy and reality" to warrant jurisdiction. *Id.* (internal quotation marks omitted).

Possibly the most expansive interpretation of standing is found in *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). In *SCRAP*, the plaintiffs argued that new Interstate Commerce Commission regulations would cause increased use of nonrecyclable goods with the result that more refuse would be discarded in the national parks in the Washington, D.C., area. *SCRAP*, 412 U.S. at 688, 93 S.Ct. at 2416. The Court held the plaintiffs had standing because they might show at trial that the alleged harms would transpire imminently if the ICC orders were not reversed. *Id.* at 689–90, 93 S.Ct. at 2417. This is not the situation in the case before us. The Sierra Club cannot show that the Plan threatens imminent environmental harm. Under the Plan, the Ouachita Forest remains in status quo except insofar as site-specific actions are proposed and approved. Standing thus can accrue only when the "factual components [are] fleshed out ... by some concrete action applying the [Plan] in a fashion that harms or threatens to harm." *NWF*, 497 U.S. at 891, 110 S.Ct. at 3190.

We are aware that on several occasions the Ninth Circuit has entertained challenges to forest plans similar to the Plan here in issue. *See, e.g., Resources Ltd., Inc. v. Robertson*, 8 F.3d 1394 (9th Cir.1993); *Portland Audubon Soc'y v. Babbitt*, 998 F.2d 705 (9th Cir.1993);

*Seattle Audubon Soc'y v. Espy,* 998 F.2d 699 (9th Cir.1993); *Idaho Conservation League v. Mumma,* 956 F.2d 1508 (9th Cir.1992). Because *Mumma,* the earliest of these cases, was decided prior to the Supreme Court's decision in *Defenders,* we believe it may be no longer viable, even though the Ninth Circuit has continued to rely upon it. Moreover, we have difficulty in discerning that a "concrete and particularized" injury in fact was alleged in any of these cases. We therefore are not persuaded by these decisions, and we decline to apply them as a basis for finding that the appellants have standing to attack the Plan outside the context of a proposed site-specific action that causes or threatens to cause injury in fact.

### IV.

Part III of this opinion sets forth our reasons for holding that the appellants lack standing to mount a per se attack on the Plan. We recognize, however, that the standing issue presents a close question. Therefore, in the alternative, and for the sake of completeness and efficiency, we will address the merits of the appellants' challenge to the District Court's grant of summary judgment in favor of the appellees. We review de novo the grant of summary judgment, using the same standards that apply to the trial court's consideration of a motion for summary judgment. *Reich v. ConAgra, Inc.,* 987 F.2d 1357, 1359 (8th Cir. 1993). We must decide whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993).

In awarding summary judgment to the appellees, the District Court properly reviewed the Plan under the deferential "arbitrary and capricious" standard of the APA. *See* 5 U.S.C. §§ 706(2)(A), (C) (1988). The court, in painstaking detail, addressed all of the appellants' claims and rejected them. In a thoughtful, meticulous, and comprehensive opinion, the District Court held that the Ouachita Forest Plan is not arbitrary or capricious and that it fully comports with the

statutes and regulations by which it is governed. Specifically, the court held that (1) the Forest Service did not violate a provision of NFMA requiring an "integrated plan" by issuing the Plan and the VMROD as separate documents, (2) the Forest Service has complied with NFMA's mandate that it issue regulations ensuring that timber-cutting methods protect bodies of water and shorelines, (3) the governing statutes and regulations do not require that the timber-cutting method be chosen at the plan level, (4) the Forest Service's decision not to draw a map and make a site-by-site analysis of the suitability for timber cutting of each of the twenty management areas was in accordance with a reasonable interpretation of the statute, (5) the appellants failed to demonstrate that the Forest Service's methodology or choices with respect to .maintaining diversity were irrational, (6) the Forest Service's inventory of resources complies with NFMA, and the appellants failed to demonstrate that the inventory is arbitrary and capricious, (7) the Forest Service considered a sufficient number of alternatives in the EIS to permit a reasoned choice, (8) the administrative record contains no evidence that the Forest Service acted in bad faith, and (9) the State of Arkansas failed to preserve for review its water-quality arguments. *Sierra Club v. Robertson,* 810 F.Supp. at 1025–30. After a careful review of the record, we fully agree with the District Court's conclusions and affirm on the basis of that court's definitive opinion.

### V.

Finally, the Sierra Club appeals the order of the District Court denying its motion for leave to file a second supplemental complaint. We have reviewed the judgment of the District Court for abuse of discretion and have found none.

### VI.

To summarize, the District Court's denial of a preliminary injunction with respect to the Oden and Choctaw sales is affirmed. As to the appellants' separate attack on the Ouachita Forest Plan, we hold that the appellants lack standing to attack the Plan except in the context of a proposed site-specific ac-

tion. Accordingly, the appeal of the District Court's order of October 22, 1992, *Sierra Club v. Robertson,* 810 F.Supp. 1021 (W.D.Ark.1992), is dismissed and that order is vacated. In the alternative, if standing is present, we affirm the District Court's order of October 22, 1992, on the merits.

Order Denying Petition for Rehearing and Suggestion for Rehearing En Banc

Aug. 2, 1994

The suggestions for rehearing en banc are denied. The petitions for rehearing by the panel are also denied.

Chief Judge ARNOLD and Judge MORRIS SHEPPARD ARNOLD took no part in the consideration of this case.