Howard KUFF, Plaintiff,

v.

UNITED STATES FOREST SERVICE, Gloria Manning, in her official capacity as acting Regional Forester for the Southern Region, Leonard Bollman, in his official capacity as District Ranger for the Pleasant Hill Ranger District of the Ozark National Forest, Defendants.

Civil No. 97–5136.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Sept. 28, 1998.

Howard Kuff, Pettigrew, AR, pro se.

Donald Kroneberger, Jr., Regional Atty., U.S. Dept. of Agriculture, Atlanta, GA.

Larry McCord, Asst. U.S. Atty., Fort Smith, AR, for Defendants.

### MEMORANDUM OPINION AND JUDGMENT

HENDREN, Chief Judge.

NOW on this 25 day of September, 1998, comes on for consideration the above-cap-tioned matter and the Court, being well and sufficiently advised, finds and orders as follows:

1. Plaintiff, Howard Kuff, *pro se,* commenced this action on August 27, 1997, seeking judicial review of administrative actions undertaken by the United States Forest Service, Acting Regional Forester Gloria Manning and District Ranger Leonard Bollman, hereinafter referred to collectively as "the Forest Service." Plaintiff alleges that the Forest Service violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.,* when authorizing timber sales pursuant to the Headwaters Project in the Pleasant Hill Ranger District of the Ozark–St. Francis National Forest.

2. The Court notes that a temporary restraining order has been in place since March 20, 1998 when United States Magistrate Judge Beverly R. Stites directed the Forest Service to delay from proceeding with timber sales in the Ozark–St. Francis National Forest, specifically, the award of the Headwaters timber sale and Tower timber sale.[1] In a Report and Recommendation dated April 16, 1998, the Magistrate Judge recommended that plaintiff's request for preliminary injunctive relief be granted; both parties have objected to the Report and Recommendation.

3. The Court will now consider not only plaintiff's claim for equitable relief but also the Forest Service's motion for summary judgment and will rule on all substantive issues raised herein.[2]

4. The Ozark–St. Francis National Forests contain about 1,139,400 acres of National Forest System land in Northern and Eastern Arkansas. Plaintiff is a property owner and resident of Newton County, Arkansas, who utilizes the Ozark–St. Francis Forests for recreational and aesthetic enjoyment. The Forest Service—a component of the U.S. Department of Agriculture—is the agency of the United States charged with administering this country's national forests. *Sierra*

---

1. The Court notes that the Magistrate Judge conducted a hearing on plaintiff's motion for injunctive relief on February 25, 1998.

2. The Court further notes that plaintiff is seeking a default

*Club v. Robertson,* 28 F.3d 753, 755 (8th Cir.1994).

■ In fulfilling its administrative obligation, the Forest Service operates under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.* NEPA seeks to insure that federal agencies will carefully evaluate the environmental consequences of proposed actions in the decision making process and that relevant information will be disseminated to a larger audience— the public—who may also play a role in the decision making. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349, 109 S.Ct. 1835, 1845, 104 L.Ed.2d 351 (1989). While NEPA procedures affect the agency's substantive decision, it is well-settled that NEPA itself does not mandate particular results but simply prescribes the necessary process. *Inland Empire Public Lands Council v. U.S. Forest Service,* 88 F.3d 754, 758 (9th Cir.1996).

> NEPA ... binds federal officials to justify their plans in public, after a full airing of alternatives. It thus blends a faith in technocratic expertise with a trust in democracy. Officials must think through the consequences of—and alternatives to—their contemplated acts; and citizens get a chance to hear and consider the rationales the officials offer. [citation omitted]. But, if a federal agency has heard all the objections to a plan and considered all the sensible options before it, the agency has fulfilled its duty.

*Simmons v. United States Army Corps of Engineers,* 120 F.3d 664, 666 (7th Cir.1997).

NEPA requires all agencies of the federal government to prepare an environmental impact statement ("EIS") when proposing to undertake "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); *see Sierra Club,* 28 F.3d at 755; *Simmons,* 120 F.3d at 666. In order to determine whether an action might have a significant impact on the environment, an agency will often prepare the more limited environmental assessment ("EA"). *Sierra Club v. Robertson,* 784 F.Supp. 593, 602 (W.D.Ark.1991). An EA is a concise document that contains a brief discussion of the need for the proposed actions

and alternatives that may be taken, and either reaches a conclusion that preparation of a site-specific EIS is necessary or concludes with a finding of no significant impact ("FONSI"), in which case preparation of an EIS is unnecessary. 40 C.F.R. § 1508.9; 40 C.F.R. § 1508.13; *Sierra Club,* 784 F.Supp. at 602; *Sierra Club v. Espy,* 38 F.3d 792, 796 (5th Cir.1994).

While plaintiff has made no specific challenge under the National Forest management Act ("NFMA"), 16 U.S.C. § 1600, *et seq.,* it is the substantive statute under which the Forest Service is acting and thus warrants discussion. NFMA directs the Secretary of Agriculture to develop Land and Resource Management Plans ("LRMPs" or "Forest Plans") for units of the National Forest System in order to provide for multiple uses and sustained yield of the various forest resources in a coordinated basis. 16 U.S.C. § 1604(a) and (e). An LRMP must establish the overall management direction for the forest for ten (10) to fifteen (15) year periods. *Sierra Club,* 28 F.3d at 755. "[A]n LRMP is, in essence, a programmatic statement of intent that establishes the basic guidelines and sets forth the planning elements that will be employed by the Forest Service in future site-specific decisions." *Id.*

Pursuant to the NFMA, the Forest Service has issued regulations which provide for a two-stage approach to forest planning. 36 C.F.R. § 219, *et seq.; see also Sierra Club,* 28 F.3d at 755; *Forest Guardians v. Dombeck,* 131 F.3d 1309, 1312 (9th Cir.1997). This approach provides for notice, comment and administrative appeal of all project level decisions. Pub.L. 102–381, § 322, 106 Stat 1419 (codified at 16 U.S.C. § 1612).

In the first stage, the Forest Service develops and maintains a proposed LRMP which coordinates the lands for outdoor recreation, range, timber, watershed, wildlife and fish purposes in accordance with the Multiple Use Sustained Yield Act, 16 U.S.C. § 528–531; *Sierra Club,* 28 F.3d at 755. To comply with NEPA, the LRMP must be accompanied by a draft and final EIS. *Id.;* 36 C.F.R. § 219.10(b). Additionally, NEPA requires that plan drafters formulate and evaluate a broad range of alternative man-

agement scenarios with the aim of "identifying the alternative that comes nearest to maximizing net public benefits." *Id.,* 36 C.F.R. § 219.12(f). The Regional Forester then reviews the proposed plan and either approves or disapproves it. *Id.,* 36 C.F.R. § 219.10(c). If approved, the plan and final EIS are supplemented by the Regional Forester's record of decision. *Id.,* 36 C.F.R. § 219.10(c)(1).

At step two, individual site-specific projects are proposed and assessed using the LRMPs. *Sierra Club,* 28 F.3d at 755; *Inland Empire Public Lands Council,* 88 F.3d at 757. These site-specific projects must be consistent with the Forest Plan's standards and guidelines. *Id.,* 16 U.S.C. § 1604(i). Additional NEPA analysis is conducted at this step to determine the effects of the specific project and to consider alternative actions. *Sierra Club,* 28 F.3d at 755.

5. The Forest Service issued the Forest Plan and accompanying programmatic Final Environmental Impact Statement ("FEIS") for the Ozark–St. Francis National Forests in July of 1986. Admin. Record, Part II, Tab 1 and 2. The Forest plan and its amendments establish the management direction and guidance to oversee the multiple-use resources of the 1.1 million plus acres of the Ozark–St. Francis National Forests for a ten (10) to fifteen (15) year period. Admin. Record, Part II Tab 2, p. i. Tab 3. Under the Forest Plan and its amendments, Management Areas ("MA") are established which place each acre of the forest into one of nine (9) management categories. Those categories include "Wilderness" (MA 1); "Research Natural Areas" (MA 2); "Developed Recreation Areas" (MA 3); "Pastures" (MA 4); "Experimental Forests" (MA 5); "Administrative Sites" (MA 6); "Special Interest Areas" (MA 7); "General Forest" (MA 8); and "Wild and Scenic River" (MA 9). Admin.

Record, Part II, Tab 2 pp. 4–21 through 4–39, Part II, Tab 10, p. 4.

On February 15, 1995, Leonard Bollman, the District Ranger for the Pleasant Hill Ranger District of the Ozark National Forest, issued notice of a proposed project called the "Headwaters Project" (headwaters of the Little Mulberry Creek). The land affected by the Headwaters project is located in MA8, "General Forest," which contains 1,031,900 acres of forest land "not in other management areas." Admin. Record, Part II, Tab 2, p. 4–34. Within this area, 744,200 acres are classified as suitable for timber production. *Id.* at 4–34 through 4–38. This acreage is located in compartments 270, 271, 272, 276, 277 and 278 of MA 8. Admin. Record, Part I, Tab 2, p. 2–1, Tab 18.

The notice advised that a proposal was being made for timber management and wildlife habitat improvements on 6,871 acres of public lands managed by the Pleasant Hill District. Specifically, the notice proposed the harvest of mixed stands of timber using the "group selection" [3] cutting method over a total of 437 acres. The group selection method would involve selecting areas with mature trees and cutting all stems in a small opening or groups averaging one-half acres in size on approximately 1/6 of the total area (73 acres). The proposal also called for harvest of 39 acres of mixed hardwood using the shelterwood harvest method.[4] In addition, the notice indicated an intent to thin 673 acres of immature oak trees and 179 acres of immature pine trees, release oak and other desirable species by chainsaw methods in fourteen (14) young regeneration areas (391 acres); conduct several prescribed burns; construct roads to access the harvest; construct fourteen (14) wildlife ponds; and create eighteen (18) wildlife openings. Admin. Record, Part I, Tab 2, p. 2–2. The "scoping notice," which was sent to interested members of the public and published in a local

---

3. Group selection is a form of "uneven aged" management, through which stands of trees are removed in small groups to maintain a variety of age classes. Admin. Record, Part II, Tab 1, p 7–8; Admin. Record, Part I, Tab 18.

4. The shelterwood harvest method is a form of "even-aged" management intended to create new

stands in which trees are essentially the same age. Under the shelterwood method a portion of the mature trees are retained in the stand in order to provide a seed source or protection while the new stand of trees is being regenerated underneath. Admin. record, Part II, Tab 1, p. 7–20.

newspaper, invited comments on the proposed Headwaters project.[5] Admin. Record, Part I, Tab 3, Tab 4. Plaintiff was mailed a copy of the scoping notice. Admin. Record, Part II, Tab 3, p. 4.

In response to the notice, the Forest Service received comments and concerns from several groups and individuals, including the plaintiff. Admin. Record, Part I, Tab 5, p. 08–110. A petition signed by over 550 individuals was submitted, requesting that any planned logging activities in compartments 270, 271, 272, 276 and 278 of the Pleasant Hill Ranger District be deferred and said compartments designated as a scenic area for dispersed recreational use.[6] Admin. Record, Part I, Tab 5, p. 013–049.

A team of Forest Service employees, called an interdisciplinary or "ID" team, was assembled to review public comments and concerns, identify issues, and develop alternative actions to the Headwaters proposal. Admin. Record, Part I, Tab 19, p. 001; Tab 2, p. 5; Tab 10, p. 001. A.i Environmental Assessment ("EA") was generated by the ID team. The EA begins with the statement of the proposed actions which are (a) to harvest timber and (b) to develop wildlife habitats within compartments 270, 271, 272, 276, 277 and 278 of the district. Admin. Record, Part I, Tab 18, p. 004. Needs for the project are identified in the EA and are set forth as follows:

> [the need to implement] ecosystem sensitive, cost effective timber management practices to produce a supply of wood products now and a sustained yield of wood products for future needs including ...; regeneration ... in stands nearing maturity ...; harvesting immature stands using the uneven aged methods to maintain and develop diverse scenery ...; maintaining forest health and vigor by thinning overstocked timber stands ...; maintaining ecosystems that contain a mix of early, mid, late, successional vegetation to meet the needs of all species ...; [de-

veloping] well distributed water sources and enhancing forage areas for wildlife [and] maintaining ecosystems that contain a diversity of plant and animal species and ages which provide recreation and viewing opportunities for forest users.

Admin. Record, Part I, Tab 18, p. 005.

In the EA, the environmental impact of five (5) alternatives was analyzed by the ID team. Admin. Record, Part I, Tab 18. Alternative 1 addressed the no logging approach; Alternative 2 addressed the logging activities proposed in the original Headwaters proposal; and Alternatives 3–5 addressed various logging intensities. Admin. Record, Tab 18, p. 006. The EA contains the documentation of the ID team with respect to the effects of each of the five (5) alternatives on environmental factors—including the effects on soil, water, and air quality; forest improvements; cultural resources; vegetation and vegetation diversity; wildlife; fisheries; proposed, endangered, threatened and sensitive species; wetlands; riparian areas; and streamside protection zones. Admin. Record, Tab 18, pp. 37–71. The EA also documents the effects of the proposed alternatives on health and human factors and social and economic factors, including aesthetics, recreation and off-highway vehicle use. Admin. Record, Tab 18, pp. 72–80.

Upon completion of the EA, District Ranger Bollman issued a request for final comments on the Headwaters project—the proposed timber sale and wildlife habitat improvement—to interested individuals, groups, and government agencies on September 11, 1995. Admin. Record, Part I, Tab 19, p. 001–002; see also Tab 22. The notice advised that alternative five (5) had been chosen as the preferred alternative to the Headwaters proposal but that a final decision on implementation of an alternative had not been reached. Admin. Record, Tab 19, p. 001–002. A legal notice of availability of public review and comment on the EA

---

5. The Forest Service must solicit public involvement and comments from the general public, forest products industry, organizations interested in forest management, and state government agencies. This step was taken in compliance with 40 C.F.R. § 1501.7.

6. Dispersed recreation is defined in the final EIS accompanying the forest plan for the Ozark–St. Francis National Forests as "[o]utdoor recreational use opportunities occurring outside developed sites over a wide area." Admin. record, Part II, Tab 1, p. 7–5.

was published in several local newspapers. Admin. Record, Part I. Tab 25. Plaintiff submitted formal and detailed comments on October 10, 1995. Admin. Record, part 1, Tab 26, p. 012–016.

On October 26, 1995, District Ranger Bollman issued a Decision Notice ("DN") and a finding of No Significant Impact ("FONSI"). Admin. Record, Part 1, Tab 27. Bollman advised that he would implement alternative five (5), indicating that it was selected because it best met the goals and objectives of the LRMP, as well as addressing the issues and concerns raised by public comment and by the ID team. Admin. Record, Part I, Tab 27, p. 006. Bollman concluded that Alternative 5 did not propose "major federal action," either individually or cumulatively, which would significantly affect the quality of the human environment. Accordingly, Bollman concluded that preparation of an EIS was not necessary. Admin. Record, Part I. Tab 27, p. 008.

On December 15, 1995, pursuant to Forest service appeal regulations promulgated at 36 C.F.R. § 215, *et seq.*, plaintiff sought administrative review of Bollman's Decision Notice and FONSI. Admin. Record, Part I, Tab 30. In his notice of appeal, plaintiff requested that Bollman's decision be reversed and that an "EIS be prepared with a complete biological and hydrological inventory and analysis as well as a comprehensive analysis of scientific, educational, economic, and recreation options and opportunities for management of all USFS lands within the Mulberry River watershed." Admin. Record, Part I. Tab 30, p. 001.

Plaintiff raised the following specific issues in his Forest Service appeal:

1. whether the scope of the decision should have included the establishment and identification of special interest areas;

2. whether an adequate range of alternatives was evaluated in the EA in accordance with 36 C.F.R. § 219.5(a)(4) and 40 C.F.R. § 1502.14(a-f);

3. whether the analysis adequately inventoried and considered old growth needs in and around the project area;

4. whether there is adequate evaluation of the cumulative effects to the watershed in accordance with 40 C.F.R. § 1508.25; and

5. whether the EA adequately considered effects to the threatened, endangered and Forest Service sensitive species and whether the mitigation measures are adequate to protect the identified species.

Admin. Record, Part I, Tab 34, p. 002.

In a decision issued February 22, 1996, the Appeal Deciding Officer discussed each of plaintiff's issues in turn. The Deciding Officer concluded that all of the issues raised by plaintiff had been adequately addressed by District Ranger Bollman throughout the decision making process, and therefore, he affirmed Bollman's October 26, 1995, decision to implement Alternative 5. Admin. Record, Part I. Tab 34, p. 006. This decision constituted the final administrative determination of the Department of Agriculture. Admin. Record, Part I, Tab 34, p. 006.

6. Plaintiff then filed his Verified Complaint for Injunctive and Declaratory Relief on August 27, 1997, appealing the agency's final decision and seeking a preliminary injunction and temporary restraining order. On January 26, 1998, the motions for injunctive relief were referred to United States Magistrate Judge Beverly R. Stites who conducted a hearing on February 25, 1998 and issued her Report and Recommendation on April 16, 1998. Both plaintiff and the Forest Service filed objections to the Report and Recommendation. Pending this Court's disposition of the Forest Service's motion for summary judgment, the Headwaters and Tower timber sales have each been enjoined in accordance with the Magistrate Judge's determination that, given the irreversibility of the Forest Service's implementation of the project—the harvesting of timber—maintenance of the *status quo* was required.

7. In its motion for summary judgment, the Forest Service argues that its decision to implement the Headwaters Project—by and through Alternative 5—was not a violation of NEPA; that the decision was an appropriate exercise of authority delegated by Congress to the Forest Service; and that the Forest Service complied with all of the requisite

procedural aspects of agency decision-making.

Although plaintiff has not formally responded to the motion for summary judgment, plaintiff's numerous briefs and pleadings filed in this matter adequately have set forth his contention that the Forest Service acted arbitrarily and capriciously and in violation of NEPA when deciding to implement the Headwaters project.

8. Plaintiff's NEPA cause of action arises under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, which provides for judicial review of final, federal agency actions. When reviewing the challenged decision of the Forest Service, the APA's "arbitrary and capricious" standard governs; this standard of review has been succinctly summarized as follows:

> Judicial review in this case is premised on the deferential "arbitrary and capricious" standard of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A) and 706(2)(C). In reviewing agency actions under this statute, the Court must hew to several well-established limitations. First, the agency's actions are presumed to be lawful and correct. Second, the agency's conclusions can be overturned only if arbitrary and capricious, giving due deference to the agency's expertise and judgment. Third, the agency's legal interpretations are controlling if they are reasonable with regard to statutes, and not plainly erroneous with regard to the agency's own regulations. Plaintiffs bear the burden on all issues in this case: They must show that the agency's actions are arbitrary, capricious, or contrary to law, or their claims must fail. Defendants are entitled to judgment if plaintiffs fail to make a sufficient showing

*Sierra Club v. Robertson,* 810 F.Supp. 1021, 1025 (W.D.Ark.1992) (footnote and citations omitted), *aff'd,* 28 F.3d 753 (8th Cir.1994); *see also Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

This standard of review is narrow, and consequently, a court may not "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Rather, the Court may only determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.; see also Sierra Club,* 784 F.Supp. at 604 ("The scope of review of an agency decision is a narrow one, for the Court must simply determine whether the Forest Service took a 'hard look' at the relevant factors and reached a decision that was neither arbitrary nor capricious.").

In conducting this review, the Court is limited to the record which was before the agency at the time the agency made its decision—the focal point for judicial review of administrative action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Thus, "to survive summary judgment, ..., plaintiff must point to facts in the record—or to factual failings in the record—which support his claims under the governing legal standard." *Krichbaum v. Kelley,* 844 F.Supp. 1107, 1110 (W.D.Va.1994).

Accordingly, this Court's inquiry under NEPA is limited to whether NEPA's procedural obligations were met by the Forest Service. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 555–558, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)(NEPA's mandate is "essentially procedural" and "role of a court reviewing the sufficiency of an agency's consideration of environmental factors is a limited one, limited by the time at which the decision was made and by the statute mandating review.")

9. In his appeal to this Court, plaintiff makes essentially two (2) arguments. First, plaintiff contends that the Forest Service's decision should have included the identification and establishment of special interest areas. Second, plaintiff contends that an inadequate range of alternatives was considered in connection with the Forest Service's EA (environmental assessment), i.e., plaintiff contends that a "no action" alternative and a

"recreation only" alternative were not considered.[7]

■ 10. With respect to plaintiff's "no action" alternative, the Court notes that when NEPA analysis is conducted to evaluate the effects of a specific project and contemplate a range of alternative actions, a "no action" alternative must be considered. 40 C.F.R. § 1508.9(b), 1502.14(d); *see Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1512 (9th Cir.1992). However, as correctly pointed out by the Magistrate Judge, the Forest Service did consider a "no action" alternative—Alternative 1—entitled "No Timber of Wildlife Habitat Improvement Alternative." As the Forest Service's original Headwaters' proposal included the harvesting of timber and the improving of wildlife, the Court is hard pressed to conclude that Alternative 1—which provides for no logging or habitat improvement—is *not* a "no action" alternative as plaintiff now argues.

Plaintiff argues that Alternative 1 is not a "no action" alternative because the EA indicates that if Alternative 1 is chosen, 471 acres of forest would be designated for old-growth management and old growth management constitutes "action." Admin. Record, Part I, Tab 18. p. 012. While this argument appears meritorious at first blush, the "old growth management" prescription of Alternative 1 simply provides for a longer than normal rotation of management to provide for late successional habitats. Admin. Record, Part II, Tab 1, p. 7–13. This is not new action, it is simply an extension of the old growth management already in place under the LRMP. The Court notes—as did the Forest Service—that Alternative 1 also provides for the continued custodial management of the forest which is a current obligation of the forest plan—it is not, however, a proposal to implement any type of additional or new activity. Admin. Record, Part II, Tab 1, p. 012. Thus, the Court believes there is no difference between the plaintiff's proposed "deferral of logging activities approach" and the Forest Service's Alternative

1, which is a "no action" alternative with a different name. Admin. Record, Part I, Tab 18. Because "NEPA" does not require a separate analysis of alternatives which are not *significantly distinguishable* from alternatives actually considered, or which have substantially similar consequences," there was no obligation on the part of the Forest Service to consider plaintiff's proposed alternative in light of their consideration of Alternative 1. *See Headwaters, Inc. v. Bureau of Land Management, Medford Dist.*, 914 F.2d 1174, 1181 (9th Cir.1990). Accordingly, the Court believes that the Forest Service gave adequate consideration to a "no action" alternative when proposing and considering Alternative 1. Consequently, there is no merit to plaintiff's claim that the Forest Service acted arbitrarily and capriciously in failing to consider a "no action" alternative.

■ 11. With respect to plaintiff's "recreation only" alternative or "special interest area" designation, plaintiff contends that the Forest Service should have considered an alternative suggested by more than 550 citizens which would "defer any planned logging activities" and designate the project area as "a scenic area for dispersed recreational use." While plaintiff acknowledges that this "recreation only" alternative is outside the scope of the Headwaters Project, he contends that the Forest Service could and should have amended the forest plan to change the management prescription for the project area—as suggested by the public comment—and designated the area as a scenic recreational area.

The Forest Service contends in response that NEPA does not require the agency to consider alternatives which do not achieve the purpose of the proposed action and thus, there is no merit to plaintiff's contention that it was required to consider a "recreation only" alternative or to designate any such special interest area.

The Court notes that NEPA requires all federal agencies to "study, develop, and describe appropriate alternatives to recom-

---

7. Although the Forest Service correctly points out that plaintiff did not raise the "no action" argument in his appeal to the Forest Service, this Court believes—as did the Magistrate Judge—

that plaintiff's pro se complaint should be liberally construed as raising this contention. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir.1996).

mended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. 4332(2)(E). However, notwithstanding the Magistrate Judge's indications to the contrary, this Court does not believe the Forest Service was required to consider alternatives in its EA which would not achieve the purposes of the proposed action—the harvesting of timber and creating wildlife habitat. *Sierra Club v. Robertson,* 810 F.Supp. 1021, 1029 (W.D.Ark.1992), *aff'd,* 28 F.3d 753 (8th Cir.1994)("NEPA does not require agencies to consider alternatives that do not achieve the purpose of the proposed action."); *see Olmsted Citizens for a Better Community v. United States,* 793 F.2d 201, 208–09 (8th Cir.1986); *see also Simmons v. United States Army Corps of Engineers,* 120 F.3d 664, 669 (7th Cir.1997) (requiring that the agency reasonably evaluate "alternative means to accomplish the general goal of the action.").

The Court finds that the Forest Service properly considered a number of alternatives which would accomplish the general goal of the proposed Headwaters project—each with varying effects on the environment. These alternatives—2 thru 5—and their accompanying effects were considered in depth and at length by the agency, as was the "no action" alternative. Admin. Record, Part I. Tab 18. After such consideration, the District Ranger specifically found that Alternative 5—the alternative which was finally selected—would have a positive impact on the local economy by providing goods and services. He further found that mitigation measures would be employed via Alternative 5 to minimize the visual impacts, thereby maintaining a quality experience for hikers and other recreational users. Thus, not only was it determined that Alternative 5 would achieve the goal of the proposed action, but also it was determined that this alternative had the "best mix" of environmental impact considerations given the public comment and concern.

The Court believes that plaintiff's "recreation only" alternative would meet none of the purposes enumerated in the Forest Service's EA and therefore finds that NEPA does not require the Forest Service to consider it in the EA. *See Fener v. Hunt,* 971 F.Supp. 1025, 1032–33 (W.D.Va.1997). In so ruling, the Court expresses its opinion that plaintiff's "no action" and "recreation only" alternatives are virtually identical in purpose—neither would permit further action in the designated areas—and thus the Forest Service's consideration of its no action alternative—Alternative 1—sufficiently addressed plaintiff's recreational concerns. The Court again notes that the Forest Service is not required to consider "every conceivable alternative." *See Kentucky, ex rel. v. Alexander,* 655 F.2d 714, 718 (6th Cir.1981).

Based upon its extensive review of the administrative record and the pleadings filed herein, the Court cannot say that the Forest Service acted arbitrarily or capriciously in connection with the procedural obligations imposed upon it by NEPA. Giving due deference to the Forest Service's expertise in these matters, the Court believes that the agency considered the relevant factors and made reasonable interpretations consistent with governing regulations. The Court further believes that the agency took a "hard look" at all of the proposed alternatives which would further or achieve the goals of the agency as well as a "no action" alternative which addressed plaintiff's aesthetic and recreational concerns.

Accordingly, the Court finds that the Forest Service's motion for summary judgment should be granted and the Forest Service's final agency action affirmed. As a result, the Court finds that all orders granting plaintiff injunctive relief should be dissolved and all other pending motions dismissed.

IT IS THEREFORE ORDERED AND ADJUDGED, that the defendants' motion for summary judgment be, and it hereby is, granted and judgment entered for all defendants dismissing plaintiff's complaint.

IT IS FURTHER ORDERED that all orders for injunctive relief be, and they hereby are, dissolved.

IT IS FURTHER ORDERED that all pending motions be, and they hereby are, dismissed.

IT IS SO ORDERED.