**FOREST WATCH, Forest Conservation Council, and Friends of the Earth**

v.

**UNITED STATES FOREST SERVICE**

**No. CIV.1:03 CV 55.**

United States District Court,
D. Vermont.

March 16, 2004.

---

Brian S. Dunkiel, Shems Dunkiel & Kassel, PLLC, Burlington, VT, Counsel for the plaintiffs.

Joseph R. Perella, Assistant U.S. Attorney, Burlington, VT, Counsel for the defendant.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

MURTHA, District Judge.

In this case, three environmental organizations challenge the Forest Service's plan to log selectively in a portion of the Green Mountain National Forest (hereinafter "GMNF") commonly referred to as the "Old Joe" area. The plaintiffs allege that, in authorizing the Old Joe timber harvesting project (hereinafter referred to as "the Old Joe Project" or "the Project"), the Forest Service has violated a variety of federal statutes, including the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600, *et seq.*, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*

Based on the administrative record (hereinafter "AR"), the parties have filed cross motions for summary judgment. For the reasons set forth below, the plaintiffs' Motion for Summary Judgment is DENIED, and the defendant's Motion for Summary Judgment is GRANTED.

### I. Background

On a motion for summary judgment, the moving party has the initial burden of informing the Court of the basis for its motion and of identifying the absence of a genuine issue of material fact. *See, e.g., Chambers v. TRM Copy Centers, Corp.*, 43 F.3d 29, 36 (2d Cir.1994). Where, as here, a motion for summary judgment is supported by affidavits and other documentary evidence, the party opposing that motion must set forth specific facts showing there is a genuine, material issue in dispute. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir.1994). Only disputes over facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A.

The AR and the submissions of the parties show the following. The GMNF Plan (hereinafter "the Plan") was formulated pursuant to the NFMA "to establish basic guidelines and set forth the planning elements that will be employed by the Forest Service in future site-specific decisions," like the ones related to the Old Joe Project. *Headwaters v. Forsgren*, 219 F.Supp.2d 1121, 1126 (D.Or.2002). Any subsequently implemented site-specific project must be consistent with the comprehensive forest plan. *Id.*

One important objective of the Plan is to "[p]rovide a well-distributed variety of vegetative conditions and types in the GMNF in order to enhance diversity, meet the habitat needs of wildlife and to provide wood products and recreational opportunities for people." AR 3561 at § 4.08 (GMNF Land and Resource Management Plan). To meet this objective, the Plan designates 17 "Management Areas" (here-

inafter "MA"). *See* AR 3564 (Record of Decision and Final EI Statement) at 5. Each MA has a distinct management focus which is designed to attain a desired future condition; the goals range from maintaining a "wilderness" character to managing the area with an eye to creating a "mosaic of vegetative conditions." *Id.; see* AR at 3561, §§ 4.117 and 4.102.

A Forest Service proposal designed to meet both economic and forest management in a small part of the GMNF is the Old Joe Project. Originally proposed in 1993, and withdrawn and reassessed in 1998, the Old Joe Project involves selective logging on approximately 316 acres of the GMNF located in the towns of Rochester and Chittenden, Vermont.

As planned, the scale and scope of the Project is relatively small. According to the Forest Service, the Project was designed to improve habitat for wildlife species that rely on early successional habitat and to provide logging opportunities for the local economy. *See* Forest Service's Motion for Judgment (Paper 22) at 1–2.

The Project area contains four MAs: (a) MA 2.1A; (b) MA 4.1; (c) MA 6.2A; and (d) MA 9.4. *See* AR at 214–18 (the Revised Environmental Assessment for the Old Joe Project–May 2002). Each MA has a specific objective. MA 2.1A seeks to provide "opportunities for recreation in a roaded natural looking setting," and calls for "[t]imber management ... primarily by using unevenaged systems such as individual tree and group selection harvests." AR at 214. MA 4.1's "desired future condition is to provide long term suitable, stable deer wintering habitat" as well as "timber and recreational opportunities" by conducting "thinning harvests." AR at 216.

MA 6.2A "emphasizes semi-primitive recreation and a generally remote, undeveloped condition." AR at 217. As with MA 2.1A and MA 4.1, MA 6.2A also permits timber harvesting activities, with "[i]ndividual tree selection harvesting" ... "needed to grow new, young, early successional stands and to increase diversity by creating open areas, both temporary and permanent." AR at 217. Lastly, MA 9.4 "overlays small portions of the other MAs in the Old Joe project area" and "is intended to protect the characteristics of land and water resources" located in the Project area, such as the Bingo, Joe Smith and Chittenden Brooks. AR at 217. The Forest Service has had the Project scrutinized by an array of specialists, including ecologists, botanists, soil scientists, biologists, archeologists, landscape architects and recreation specialists. *See, e.g.,* AR at 298 (listing members of the "Interdisciplinary Team"). On its face, therefore, the Project, as proposed, can be conducted in a manner consistent with the activities permitted in the affected MAs.

The Forest Service's Revised Environmental Assessment ("EA") notes the proposed timber harvest could affect fisheries and stream habitats by causing soil erosion and stream sedimentation in adjacent areas. AR at 288. Mitigation measures, such as conducting the harvest only in winter, will reduce adverse impacts. *See generally* AR at 317–318 (listing water and soil resources mitigation measures). In addition, the stream habitat would be improved by the placement of "logs, trees, root wads, and other woody material" in the pool area. AR at 286.

*B.*

Plaintiffs' members use the Project area for hiking, camping, photography, and other outdoor activities. In October and November 1998, plaintiffs Forest Watch and Forest Conservation Council filed separate administrative appeals concerning the Project. *See* AR at 3534 and 3540. Simulta-

neously, in early November 1998, the Forest Service began marking selected trees for harvesting. *See* AR at 37.

On November 13, 1998, the Forest Service determined that Forest Watch's administrative appeal raised an issue as to whether the Indiana bat, an endangered species, was adequately protected under the Old Joe Project. It decided to withdraw the Old Joe Project, as first proposed, and to seek "approval from the U.S. Fish and Wildlife Service [hereinafter 'FWS'] as to what best protection measures should be for the Indiana Bat." AR at 3558. Pursuant to 36 C.F.R. § 215.15(a)(6), the Forest Service dismissed the plaintiffs' administrative appeals as moot. *See* AR at 3559–60.

FWS proposed an amendment to the Forest Plan which updated standards and guidelines for forest projects and was designed to afford additional protection to threatened, endangered and sensitive species, including the Indiana bat. *See* AR at 2777–81 (Decision Notice and Finding of No Significant Impact). The Forest Service adopted the FWS recommendations as part of the Forest Plan. *See* AR at 3561, § Forest Plan Amendment 9 (April 2002).

Meanwhile, the Forest Service continued marking trees in accordance with the selected alternative in the original Project decision. The Service expected any revised decision on the Project would incorporate virtually the same harvesting as the original Old Joe proposal. *See* AR at 37 (Forest Service response to public comments). To preserve potential Indiana bat habitat, however, the Forest Service determined that two more wildlife trees per acre be left than would otherwise be required under the Forest Plan. *See* AR at 2399.

In May 2002, the Forest Service released for public comment the Revised EA which was issued after modifications prompted by the Indiana bat issue. *See* AR at 201. The revised Old Joe Project was substantially similar to the original June 1998 proposal. The Forest Service summarizes the more meaningful differences between the present Project and as first proposed as follows:

> The proposed Old Joe Project was substantially similar to the original June 1998 decision with a few differences, one being that the Forest Service eliminated a 31–acre stand from the revised proposal because a Forest Service Soil Scientist and a Forestry Technician raised concerns about steep grades and inability to effectively mitigate impacts to soil and nearby small streams in this stand. AR at 224, 2390. Another change was that the Forest Service incorporated new mitigation information regarding the new Plan Amendment 9 (addressing Indiana bat) into the EA. AR at 212. . . .
>
> The Revised Old Joe Project proposed timber harvesting on 313 acres of land, and stream habitat improvements on approximately 3/4 mile of Chittenden Brook and 1/4 mile of Joe Smith Brook. In addition, a short stretch (.6 mile) of an existing cross-country ski trail would be relocated from Forest Road 45 to a trail to be constructed adjacent to the road. AR at 219. The project's purpose remained to improve wildlife habitat while also providing wood products for public consumption.

Paper 22 at 14–15.

The revised Old Joe Project EA, as presented for public comment, contained three alternatives to the proposed action: Alternative B; Alternative C; and the "No Action" alternative. *See generally* AR at 219 *et seq.; see also* AR at 223–40. On August 19, 2002, the Forest Service selected Alternative C, which incorporates 316 acres of forest subject to commercial timber harvesting, as the one which "best

meets the purpose of and need for the project, and addresses key issues and concerns raised by both the public and the Forest Service resource staff." AR at 10 (Decision Notice and Finding of No Significant Impact for Revised EA). Specifically, the Forest Service found Alternative C would: Increase vegetation management over the proposed action by increasing the area of two aspen regeneration clearcuts from 3 to 6 acres each; improve deer wintering areas by creating browse quality habitat; and improve stream habitats by adding large, wood debris to the stream channel in a manner that would mimic beneficial, natural conditions. *See* AR at 10–11.

Furthermore, Alternative C incorporates various measures to mitigate potential adverse effects of the harvesting. *See* AR at 12–16. For example, the Plan calls for all timber harvesting to be conducted in the winter, so as to minimize compaction and rutting. *See* AR at 13. In addition, harvesters would use existing skid trails, where possible, to "minimize the need for new trails, and thus reduce the amount of new ground disturbance that would be needed to open up new trails." AR at 14, para. 10.

All three plaintiffs filed administrative appeals of the Forest Service's final decision to implement Alternative C. *See* AR at 412 and 443. On December 6, 2002, the Forest Service affirmed the decision of the District Ranger to implement the Project. AR at 503 (letter decision). The plaintiffs filed this suit, seeking to enjoin the Forest Service from commencing the Project.

## II. Discussion

The Forest Service has broad discretion to administer National Forests with various, competing purposes in mind, including "outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. These principles have been incorporated into the process prescribed by NEPA and the statutory scheme of NFMA. *See Sierra Club v. Espy*, 38 F.3d 792, 795 (5th Cir.1994).

Under the NFMA, the Forest Service is required to implement forest plans which, *inter alia*, designate general management areas in which activities, such as logging, are permitted. *See* 16 U.S.C. § 1604(a). Within this framework, specific proposals, such as the Old Joe Project, are subject to review for consistency with the overall forest plan and compliance with NEPA and other applicable laws and regulations. *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 371, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Sierra Club v. Robertson*, 28 F.3d 753, 755 (8th Cir.1994).

To ensure compliance, an agency prepares either an environmental impact statement ("EIS"); an environmental assessment ("EA"); or a finding of no significant impact ("FONSI") to assess the likely impacts of a project on the environment. *See* 40 C.F.R. §§ 1501–1502 (NEPA and agency planning regulations); *see also* 42 U.S.C. § 4332(2)(C)(The Forest Service is required to prepare an EIS for proposed "major Federal actions significantly affecting the quality of the human environment."). Thereafter, site-specific plans are subject to public review and comment, as well as the issuance of a public notice which identifies the procedure for filing timely administrative appeals. *See, e.g.,* 36 C.F.R. § 215.5(b) and 215.6(b)(30–day public comment periods). Here, the plaintiffs make no credible claim that the Forest Service failed to comply with these regulatory notice and hearing requirements.

Under the APA, the Court may set aside agency actions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). In making such a determina-

tion, the Court must "consider whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." *Lamb v. Thompson*, 265 F.3d 1038, 1045 (10th Cir. 2001) (citation and quotations omitted). "If an agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, the Court may find its actions arbitrary and capricious." *National Audubon Soc'y v. Hoffman*, 917 F.Supp. 280, 287 (D.Vt.1995) (citation and quotations omitted), *rev'd on other grounds*, 132 F.3d 7 (2d Cir.1997); *accord Soler v. G & U, Inc.*, 833 F.2d 1104, 1107 (2d Cir.1987).

■ The plaintiffs contend the Forest Service "fail[ed] to comply with NEPA's most basic requirement—a rigorous and objective evaluation of the 'no-action' alternative." *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgment (Paper 15) at 1; Plaintiffs' Reply (Paper 28) at 1. The AR does not support this contention. The AR clearly shows the Forest Service followed statutory procedures to analyze a no-action alternative. The mere fact that the no-action alternative was not chosen, or was given a briefer discussion than the plaintiffs believe is merited, does not suggest that alternative was insufficiently addressed or arbitrarily rejected. *See Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1065 (9th Cir.1998); *see also Indiana Forest Alliance, Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 860 (7th Cir.2003) ("Those courts that have addressed the issue have consistently held that when an agency's finding of no significant impact is based upon adequate data, the fact that the record also contains evidence supporting a different scientific opinion does not render the agency's decision arbitrary and capricious.")(quotations omitted).

Here, the Forest Service had to ensure proposed timber sales are consistent with the underlying Forest Plan. The plaintiffs maintain the Project does not conform to those standards. As noted *supra*, the AR does not support this argument. The Forest Plan, moreover, clearly permits logging in the areas of the MAs at issue in this case. Accordingly, the Court does not find the Forest Service's decision to implement the Old Joe Project arbitrary and capricious.

■ Plaintiffs also argue the Forest Service has not complied with the NFMA's mandate to maintain viable populations of existing native species, specifically the chestnut-sided warbler and the American woodcock. *See* Paper 15 at 22–23. The Forest "Service is entitled to use its own methodology, unless it is irrational." *Sierra Club v. Marita*, 46 F.3d 606, 621 (7th Cir.1995); *accord Indiana Forest Alliance*, 325 F.3d at 863. Applicable regulations require the Forest Service to "consider the best available science" when implementing the forest plan. *See* 36 C.F.R. § 219.35(a). Here, the Forest Service relied on habitat and population monitoring. *See* AR at 269. The agency also considered studies from a variety of sources to support its conclusion that the Old Joe Project would either benefit or not measurably impact a variety of animal populations. *See* AR at 369–79. In fact, the Forest Service suggested the Project might benefit management indicator species populations more than implementing a "no action" alternative. *See* AR at 274 (Table III–4) and 498 ("All" alternatives requiring action found more beneficial than "no action" alternative); *see also* AR at 376 (suggesting timber harvest may ad-

dress loss of early successional forest/edge habitat). That conclusion has support in the AR and therefore is not arbitrary and capricious. *See Sierra Club v. Espy*, 38 F.3d at 801 (noting the agency's judgment in assessing issues such as diversity are entitled to "considerable respect").

█ Furthermore, the plaintiffs claim the Forest Service violated the procedural requirements of NEPA and NFMA when it decided to reroute a main skid trail after publication of its Decision Notice. They argue the Project impermissibly "calls for log skidding on steep slopes and placement of log landings without ensuring that irreversible damage will not be done to soils, slopes, and watershed conditions." Paper 15 at 30. The Forest Service's experts determined that such skid trail relocation, in effect, did not constitute a substantial change in the revised EA. *See* AR at 878–80 (finding of botanist, biologist and forest archeologist). The plaintiffs have not demonstrated this finding is without support in the AR. Such a finding obviates the need for another round of public notification and comment under NEPA. *See* 40 C.F.R. § 1502.9(c)(1)(i)-(ii)(a small increase in adverse effects does not constitute a "substantial change" or "significant new circumstance" requiring supplements to EIS).

█ A substantial portion of plaintiffs' submissions address the Forest Service's marking of trees prior to a final decision to conduct the proposed timber harvest. They argue, *inter alia*, ·that such conduct violates NEPA and suggests an ill-considered rejection of the "no action alternative." *See* 40 C.F.R. § 1506.1(a)(2)("Until an agency issues a record of decision ... no action concerning the proposal shall be taken which would ... [l]imit the choice of reasonable alternatives.").

This issue requires only brief discussion. The administrative record shows the For-est Service began its tree marking in November 1998, a time which is unobjectionable since it was after the original Old Joe decision notice was issued and before it was withdrawn for further analysis relating to the Indiana bat. *See* AR at 37. The agency did not anticipate a substantial change to the Project as a result of the additional analysis. Moreover, the placing of such "paint marks [does not] constitute the type of adverse environmental impact[ ] sufficient to constitute a violation of NEPA." *Headwaters v. Forsgren*, 219 F.Supp.2d at 1129.

█ In a related argument, the plaintiffs maintain the Forest Service failed to account for the economic value associated with the "no action alternative." *See* Paper 15 at 10. As a general matter, "[t]here is no principled basis for plaintiffs' assertion that the national forests must be managed primarily to produce economic benefits." *Intermountain Forest Ind. Ass'n v. Lyng*, 683 F.Supp. 1330, 1338 (D.Wy.1988). In addition, the AR demonstrates the Forest Service conducted both an environmental and economic analysis of the Project. *See, e.g.,* AR at 73–75 (re-. sponses to public comments) and 291–93 (EA's economic analysis). Regarding recreational uses, the Forest Service specifically concluded that, based on previous timber harvests conducted in the area, recreational uses would likely remain "unchanged over time." AR at 312. Further specific economic analysis which quantifies all costs and benefits before implementing a timber sale is not a necessary prerequisite to approving a proposed timber sale. *See Ass'n of Public Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1186 (9th Cir.1997)(NEPA does not require an agency to "examine the economic consequences of its actions."); *Envtl. Def. Fund, Inc. v. Costle*, 439 F.Supp. 980, 993 (E.D.N.Y.1977)("[N]o re-

quirement in NEPA for the placement of dollar values on environmental impacts ...."); *see also Sierra Club v. Marita,* 46 F.3d at 621 (An agency "is entitled to use its own methodology, unless it is irrational.").

### III. Conclusion

The plaintiffs' contention that the Forest Service did not adequately consider competing uses is not supported by the record. The AR documents the agency's consideration of a variety of impacts of the Old Joe Project, including the costs and benefits of not proceeding with the Project. *See* AR at 242 (recreation); 248 (visual quality of area); 255 (wildlife); 262 (neotropical birds); 266 (vegetation); 267 (management indicator species); 296 (soil and water). The plaintiffs' disagreement with the Forest Service's findings is insufficient to render its decision arbitrary and capricious.

The defendant's Motion for Summary Judgment is GRANTED. The plaintiffs' Motion for Summary Judgment is DENIED. The defendant's request for hearing is DENIED as moot.

SO ORDERED.