Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

Frenchman-Cambridge Irrigation District, by its
Board of Directors, a Nebraska political
subdivision, appellant and cross-appellee,
v. Nebraska Department of Natural
Resources et al., appellees
and cross-appellants.

___ N.W.2d ___

Filed October 6, 2017.    No. S-16-1121.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's
   grant of a motion to dismiss on the pleadings is reviewed de novo,
   accepting the allegations in the complaint as true and drawing all rea-
   sonable inferences in favor of the nonmoving party.
2. **Jurisdiction: Appeal and Error.** Before proceeding to the legal issues
   presented for review, it is the duty of an appellate court to determine
   whether it has jurisdiction over the matter before it.
3. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised
   at any time by any party or by the court sua sponte.
4. **Appeal and Error.** An appellate court is not obligated to engage in an
   analysis that is not necessary to adjudicate the case and controversy
   before it.
5. **Standing: Proof.** To have standing, a litigant first must clearly demon-
   strate that it has suffered an injury in fact. That injury must be concrete
   in both a qualitative and temporal sense.
6. **Complaints: Justiciable Issues.** A complainant must allege an injury
   to itself that is distinct and palpable, as opposed to merely abstract,
   and the alleged harm must be actual or imminent, not conjectural
   or hypothetical.

Appeal from the District Court for Furnas County: James E.
Doyle IV, Judge. Vacated and dismissed.

David A. Domina and Christian T. Williams, of Domina Law Group, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, Justin D. Lavene, Joshua E. Dethlefsen, and Kathleen A. Miller for appellees.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, KELCH, and FUNKE, JJ.

KELCH, J.

## NATURE OF CASE

Frenchman-Cambridge Irrigation District (FCID) appeals the district court's order dismissing its petition under Neb. Ct. R. Pldg. § 6-1112(b)(6) for failure to state a claim upon which relief can be granted. Before determining whether the district court's dismissal of the petition was proper, this court must determine whether FCID has standing to challenge the integrated management plans at issue and whether the court has subject matter jurisdiction pursuant to Neb. Rev. Stat. § 46-750 (Reissue 2010) or Neb. Rev. Stat. § 84-911(1) (Reissue 2014).

## BACKGROUND

FCID is a political subdivision created pursuant to the irrigation districts statutes,[1] under which FCID is authorized to enter into contracts to supply water for irrigation purposes with any person and with certain organizations within its district.[2] According to its petition, FCID uses the revenue from its sale of water to fulfill contractual obligations to the U.S. Department of the Interior and the U.S. Bureau of Reclamation.

FCID is located within the Republican River Basin. The portion of the basin located in Nebraska is divided into three

---

[1] See Neb. Rev. Stat. § 46-101 et seq. (Reissue 2010 & Cum. Supp. 2016).

[2] § 46-1,143.

- 1001 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
FRENCHMAN-CAMBRIDGE IRR. DIST. v. DEPT. OF NAT. RES.
Cite as 297 Neb. 999

natural resources districts: the Upper Republican Natural Resources District, the Middle Republican Natural Resources District, and the Lower Republican Natural Resources District. Each natural resources district (NRD), along with the other NRD's in Nebraska, was created by statute[3] to develop and conserve the state's natural resources, including its ground water and surface water.[4]

In 2004, portions of the Republican River Basin were declared "fully appropriated."[5] When a river basin is determined to be fully appropriated, Neb. Rev. Stat. § 46-715 (Cum. Supp. 2016) of the Nebraska Ground Water Management and Protection Act provides that the NRD's encompassing the basin and the Department of Natural Resources (Department) shall jointly develop an integrated management plan (IMP) to achieve and sustain a balance between water uses and water supplies for the long term.

In December 2015, the Republican River Basin NRD's adopted, and the Department approved, IMP's that provided for a 20-percent reduction in ground water pumping in the Republican River Basin area. Before these IMP's were adopted and approved, previous IMP's provided for a 25-percent reduction in ground water pumping. Thus, the new IMP's allow for 5 percent more ground water pumping than the previous ones.[6]

In January 2016, FCID filed a petition for review under the Administrative Procedure Act,[7] challenging the newly approved IMP's on constitutional and other grounds. In the petition, FCID alleges that the IMP's violate the U.S.

---

[3] Neb. Rev. Stat. § 2-3203 (Reissue 2012).

[4] Neb. Rev. Stat. § 2-3229 (Reissue 2012).

[5] *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res.*, 281 Neb. 992, 996, 801 N.W.2d 253, 257 (2011).

[6] See *Kansas v. Nebraska*, ___ U.S. ___, 135 S. Ct. 1042, 191 L. Ed. 2d 1 (2015).

[7] See Neb. Rev. Stat. § 84-901 et seq. (Reissue 2014).

Constitution's Compact Clause,[8] Commerce Clause,[9] Equal Protection Clause,[10] and Due Process Clause,[11] as well as provisions of the Nebraska Constitution and the Republican River Compact. As defendants in the suit, FCID listed the Department, the director of the Department, the Republican River Basin NRD's, and the Attorney General.

In March 2016, the defendants filed a motion to dismiss pursuant to § 6-1112(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. A hearing on the matter was held on July 14.

On November 3, 2016, the district court issued an order granting the motion to dismiss. The district court found that there was subject matter jurisdiction, but dismissed the petition for failure to state a claim upon which relief could be granted.

From that order, FCID appeals and the defendants cross-appeal.

ASSIGNMENTS OF ERROR

Although FCID agrees with the district court that it had subject matter jurisdiction, FCID assigns that "the basis on which it found jurisdiction was not completely correct." FCID also assigns, combined and restated, that the district court erred in finding that its petition failed to state a claim upon which relief could be granted and in failing to find that the IMP's were invalid on constitutional and statutory grounds.

The defendants cross-appeal and assign, combined and restated, that the district court erred in finding that FCID had standing, that the court had subject matter jurisdiction, and that the IMP's are "'rules and regulations.'"

---

[8] U.S. Const. art. I, § 10, cl. 3.

[9] *Id.*, § 8, cl. 3.

[10] U.S. Const. amend. 14.

[11] *Id.*

## STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[12]

## ANALYSIS

[2,3] Before proceeding to the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[13] FCID claims that the district court, acting as an intermediate appellate court, erred when it considered and granted the defendants' motion to dismiss for lack of subject matter jurisdiction. However, lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.[14]

[4] In this case, the State has raised two issues regarding subject matter jurisdiction: whether FCID has standing to challenge the IMP's[15] and whether the district court had subject matter jurisdiction under § 46-750 or § 84-911(1). Because we conclude that FCID lacks standing to challenge the IMP's, we do not reach the second issue. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[16]

[5,6] To have standing, a litigant first must clearly demonstrate that it has suffered an injury in fact.[17] That injury must

---

[12] *Zapata v. McHugh*, 296 Neb. 216, 893 N.W.2d 720 (2017).

[13] *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009).

[14] *Davis v. Choctaw Constr.*, 280 Neb. 714, 789 N.W.2d 698 (2010).

[15] See *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 924, 830 N.W.2d 474, 478 (2013) ("[t]he defect of standing is a defect of subject matter jurisdiction").

[16] *Selma Development v. Great Western Bank*, 285 Neb. 37, 825 N.W.2d 215 (2013).

[17] *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

- 1004 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FRENCHMAN-CAMBRIDGE IRR. DIST. v. DEPT. OF NAT. RES.
Cite as 297 Neb. 999

be concrete in both a qualitative and temporal sense.[18] A complainant must allege an injury to itself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical.[19]

FCID claims it has standing because the IMP's, which allow for increased ground water pumping, will deprive it of waters that would otherwise be available for its operations. In its petition for review, FCID alleges in part that increased ground water pumping will "interfere with stream recharge and flow . . . and [will] diminish surface waters otherwise subject to capture and diversion for use by FCID to fill its priority flow permits." FCID further alleges that the reduced streamflow will cause it to have to modify its budget and operations and to "attempt to negotiate for relief [for defaulting] from its obligations to [the Department of the Interior] and [the Bureau of Reclamation]."

We have previously considered the issue of standing in the water dispute case of *Central Neb. Pub. Power Dist. v. North Platte NRD*.[20] In that case, we held that an irrigation district did not adequately allege how its particular water use interest had been injured by an order of an NRD when it merely alleged that the order would cause a reduced water supply. In other words, the irrigation district failed to state how a reduced water supply would cause it harm. Here, however, FCID has additionally alleged that the reduced water supply would cause it to have to modify its budget and operations and to negotiate for relief for breaching its contracts. Thus, FCID argues that this case is distinguishable from *Central Neb. Pub. Power Dist.*, because its petition contains more specific allegations of harm than those in that case.

However, although FCID alleges more specific allegations of harm than those alleged in *Central Neb. Pub. Power*

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

- 1005 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
FRENCHMAN-CAMBRIDGE IRR. DIST. v. DEPT. OF NAT. RES.
Cite as 297 Neb. 999

*Dist.*, that additional alleged harm does not occur unless the IMP's actually decrease the water supply. And, as the defendants point out, the IMP's do not by themselves cause more ground water to be pumped. Instead, IMP's are simply jointly developed plans for how water will be managed.[21] Although the IMP's set forth the water controls that may be employed in times of water shortage, the IMP's themselves do not actually implement the controls. Instead, for those controls to be implemented, the NRD's must determine that such controls are necessary and issue subsequent orders pursuant to § 46-715 and Neb. Rev. Stat. §§ 46-718(2) and 46-739 (Reissue 2010).

This conclusion can be drawn not only from the three statutory sections above, but from the IMP's themselves. For example, within the IMP developed by the Department and the Middle Republican NRD, it states, "In accordance with *Neb. Rev. Stat.* § 46-715, one or more of the ground water controls authorized by *Neb. Rev. Stat.* § 46-739 and *Neb. Rev. Stat.* § 46-740 shall be adopted for the purpose of implementing this plan." In the IMP developed by the Department and the Upper Republican NRD, as well as the IMP developed by the Department and the Lower Republican NRD, it states that "[t]he [NRD] will utilize the ground water controls as provided by *Neb. Rev. Stat.* §§ 46-715, 46-739, and 46-740 to form the Ground Water Controls component of this IMP." Section 46-739 authorizes the NRD to issue the actual order that would limit the water usage by appropriators.

Before orders are issued pursuant to § 46-739, the IMP's contemplate that reviews of the water usage must be necessary. All of the IMP's at issue state that the "ground water depletions are maintained within their portion of Nebraska's Allowable Ground Water Depletions as computed through use of the Republican River Compact Administration Ground Water Model" and that "voluntary reductions in baseline

---

[21] See § 46-715.

- 1006 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FRENCHMAN-CAMBRIDGE IRR. DIST. v. DEPT. OF NAT. RES.
Cite as 297 Neb. 999

pumping volumes will continue to be pursued by the [NRD] with the incentive of limiting the level of long-term management actions that are necessary during Compact Call Years." Finally, under the "Compliance Standards" section of each IMP, it states that "[o]n an annual basis the [Department] and [NRD] shall reexamine the sufficiency and effectiveness of the Compliance Standards to determine if amendments or modifications are necessary to ensure the State's compliance with the [Final Settlement Stipulation] and Compact." These examples reflect that the IMP's call for an annual review and that based upon the review, additional orders could be issued as needed. If and when such orders are issued, FCID would then have the right to seek judicial review depending upon the issue in question and the nature of the order.

Our conclusion that FCID has failed to show that the IMP's have caused an injury-in-fact is also supported by the Eighth Circuit's decision in *Sierra Club v. Robertson*.[22] That case involved a challenge to a land and resource management plan under the National Forest Management Act of 1976. In *Sierra Club*, the plaintiffs challenged the plan, alleging that the amount and method of timber harvesting permitted by the plan caused environmental or aesthetic harm, in violation of the National Forest Management Act of 1976 and the National Environmental Policy Act of 1969. But because the latter act required an additional stage of site-specific analysis before any timber could actually be cleared, the Eighth Circuit held that the asserted injury was not sufficiently imminent at the initial forest planning stage to create an injury in fact and that thus, the plaintiffs failed to establish standing.[23] Similarly, here, FCID's asserted injury is not sufficiently imminent because in order for the water controls set forth in the IMP's to be implemented, the NRD would have to determine that such controls were necessary and issue subsequent orders.

---

[22] *Sierra Club v. Robertson*, 28 F.3d 753 (8th Cir. 1994).

[23] *Id.*

- 1007 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
FRENCHMAN-CAMBRIDGE IRR. DIST. v. DEPT. OF NAT. RES.
Cite as 297 Neb. 999

Accordingly, we conclude that FCID has failed to establish standing and that as a result, this court lacks jurisdiction.[24] Therefore, we dismiss the appeal.

Because we conclude that FCID lacks standing to challenge the IMP's, we need not reach the second jurisdictional question.[25]

## CONCLUSION

For the foregoing reasons, we conclude that FCID lacked standing to challenge the IMP's and that the district court lacked jurisdiction over the case. As a result, we also lack jurisdiction and dismiss the appeal and cross-appeal and hereby vacate the order of the district court for lack of jurisdiction.

VACATED AND DISMISSED.

STACY, J., not participating.

---

[24] See *Landrum v. City of Omaha Planning Bd., ante* p. 165, 899 N.W.2d 598 (2017).

[25] See *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).